BRIAN VOGEL, SBN 167493
brian@bvogel.com
THE LAW OFFICES OF BRIAN A. VOGEL, PC
770 County Square Drive, Suite 104
Ventura, CA 93003
Telephone: (805) 654-0400
Facsimile: (805) 654-3026

Attorney for Plaintiffs
CHARLES VELASQUEZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES VELASQUEZ, an individual on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>THE COUNTY OF VENTURA, THE VENTURA COUNTY SHERIFF'S DEPARTMENT, VENTURA COUNTY SHERIFF BOB BROOKS, AN INDIVIDUAL, AND DOES 1-10<br><br>Defendants. | Case No. CV10-10080 CBM(PWJx)<br><br>**VELASQUEZ V. COUNTY OF VENTURA CLASS ACTION**<br><br>**JOINT STIPULATION OF ISSUES IN DISPUTE ON PLAINTIFF'S MOTION TO COMPEL.**<br>**[CDLR 37-2.1]**<br><br>**[Filed concurrently with Plaintiff's Motion to Compel, Declaration of**<br><br>Date:        July 18, 2011<br>Time:       12:15 p.m.<br>Courtroom: 23-3rd Floor |

Plaintiff Charles Velasquez and Defendants County of Ventura, Ventura County Sheriff's Department and Ventura County Sheriff Bob Brooks, by and through their counsel of record, hereby enter into the following Joint Stipulation of Issues in Dispute.

1

# I.

## INTRODUCTORY STATEMENT

This lawsuit has been brought as a proposed class action. Plaintiff Velasquez has brought the following claims for relief in the U.S. District Court for the Central District of California: (1) Violation of Civil Rights: Unreasonable Seizures and False Imprisonment (42 U.S.C. § 1983/4th and 14th Amendments); (2) Violation of Civil Rights: Deprivation of Liberty (42 U.S.C. § 1983/14th Amendment) (3) *Monell* Claims on the 42 U.S.C. § 1983 claims; (4) False Imprisonment; (5) California Civil Code § 52.1: Interference with Exercise of Civil Rights by Unreasonable Detention. The class is defined as all persons who have been wrongfully arrested pursuant to a warrant for another person and then wrongfully detained and incarcerated as a result of the County of Ventura and the Ventura Sheriff's Department's failure to check the individuals' identities, during the time period of December 30, 2008 until the present.

On May 4, 2011, Plaintiff propounded Request for Production of Documents, Sets No. One and Two, Special Interrogatories, Sets No. One and Request for Admissions, Sets No. One on Defendants Ventura County Sheriff's Department and Ventura County by U.S. Mail. On June 6, 2011, Defendants Ventura County Sheriff's Department and Ventura County served Plaintiffs by U.S. Mail with separate responses to Plaintiff's written discovery requests. (Declaration of Brian A. Vogel, ¶ 6)

The primary issue raised in this motion is whether Plaintiff is entitled to the putative class members contact information during the pre-certification stage.

# II.

# ISSUE IN DISPUTE

Does a non-party inmate of a jail, who may be a putative plaintiff in a class action, possess a constitutional right of privacy which prevents a Sheriff's Department from disclosing his or her contact information?

# III.

# DESCRIPTION OF DISPUTED DISCOVERY

A.  **INTERROGATORY NO. 1:**

IDENTIFY any and all PERSONS, including names and contact information who, between December 30, 2008 and the present, have been detained and/or incarcerated for any length of time in any jail in Ventura County based upon a warrant and/or warrants where those PERSONS were later found not to be the wanted subject under said warrant and/or warrants.

B.  **RESPONSE TO INTERROGATORY NO. 1:**

Pursuant to a query of VCIJIS records, the Ventura County Sheriff's Office has established that there are 97 individuals who, during the requested time frame, potentially meet the criteria specified. These individuals are listed under one of two booking disposition codes utilized by the Ventura County Sheriff's Office: "booked in error" or "wrong person selected." While only the latter booking disposition code — wrong person selected — would actually be the correct answer to this question, out of an abundance of caution, defendant has also searched the former booking disposition code because it is

conceivable that since the two codes sound somewhat alike, a person may have made a data entry error and entered the type of information sought by this interrogatory under the former booking disposition code, i.e., booked in error. The Sheriff's Office has produced, as an attachment to the concurrently served response to the first request for production of documents, this list, subject to the caveat that the identity of non-party prisoners is privileged under the penumbral right of privacy in the embarrassing status of incarceration, as recognized by *Denari v. Superior Court*, 215 Cal.App.3d 1488 (1989). But given the fact that plaintiffs' counsel adamantly refuses to grant the Sheriff's Office even a single-day extension to respond to the requested discovery, there was not sufficient time in the 30 days allotted for response (the multiple discovery items being personally delivered) to harvest the data necessary to determine whether these 97 individuals really do or do not fit within the criteria of the interrogatory. For that to occur, each of the inmate files for those 97 individuals must be hand-located and reviewed by a knowledgeable member of the Sheriff's Office, who can then make the determination as to whether or not the booking disposition code entered in the VCIJIS computer system actually indicates satisfaction of the criteria of this interrogatory or not. It is estimated that working at top speed, the Sheriff's personnel can process one such file approximately every half hour. This means that it will take a minimum of one week and a maximum of two weeks to harvest the data requested. Such data will be produced on or before June 17, 2011. Photocopies of the document in the files indicating the satisfaction or non-satisfaction of the parameters of this interrogatory will be supplementally produced

along with that response. The booking disposition code "booked in error" captures booking mistakes, such as use of the wrong Penal Code section or an inmate having been erroneously taken to the Sheriff's Office when he or she should have been booked at an unrelated facility.

C.   **REQUEST FOR PRODUCTION NO. 1:**

Any and all DOCUMENTS referring or relating to any and all PERSONS who, between December 30, 2008 and the present, have been detained and/or incarcerated for any length of time in any jail in Ventura County based upon a warrant and/or warrants where those PERSONS were later found not to be the wanted subject under said warrant and/or warrants.

D.   **RESPONSE TO REQUEST NO. 1:**

Defendant objects to the incorrect phrase "in any jail in Ventura County." The Sheriff's Office does not manage, operate, control, or in any monitor local city jails, such as the Oxnard or Santa Paula jails. Therefore, the request is objectionable, in toto. But in a spirit of discovery, the defendant will interpret the phrase "in any jail in Ventura County" to instead mean any jail operated by the Ventura County Sheriff's Office.

With that clarification, defendant Ventura County Sheriff's Office performed a query of its VCIJIS database using two disposition codes, "booked in error" and "wrong person selected." Although only the "wrong person selected" booking disposition code would actually fit the subject matter of this litigation, out of an abundance of caution defendant searched a similar-sounding database (in case one of its employees erroneously

5

entered a mistaken warrant arrest into a similar-sounding database). The "booked in error" database would capture incorrect keystrokes, incorrect booking charges, wrong facility, and so forth, but not individuals who were the subject of mistaken warrant arrests.

This effort by defendant generated a list of 97 individuals. Defendant will have its employees manually retrieve and review each of these inmate files in order to ascertain whether the individual truly meets the criteria listed in this production classification, i.e., fell under the booking disposition code "wrong person selected." In addition, the personnel reviewing the individual inmate files to glean this information will also search for the information requested by plaintiffs' third through seventh interrogatories.

But if the individual inmate's file — that is, those 97 individuals — does not contain enough information to establish whether the person falls within the subject matter of this lawsuit, an additional search of Sheriff's computerized records will need to be done, as well. Defendant estimates that the retrieval and review, as well as photocopying, of each of the 97 persons' files will take at least 30 minutes per person (that is to say, 30 minutes for each of the files).

The minimum time to mine this data will therefore be approximately 45 hours. Defendant could not complete this complex project, as well as respond to eight sets of written discovery, within the initial response deadline dictated by the personal delivery of the eight sets of discovery. Defendant's counsel beseeched plaintiffs' counsel for a short extension, but plaintiffs' counsel adamantly refused, without any explanation, to grant

even a short extension to respond to the eight sets of written discovery, even though it would have been defendant's first requested extension.

Defendant attaches hereto (Bates-stamped 1042-1045) two lists containing the names of 97 individuals retrieved by running computer queries of Sheriff's VCIJIS records for the two stated booking disposition codes. These names are the inmate files which will be searched to determine whether they would be mistaken warrant arrests, which is the subject matter of this lawsuit. The provision of the two lists, however, is subject to the nondisclosure requirements based upon the penumbral right of privacy of incarcerated individuals in their perhaps embarrassing status, as recognized by appellate authority, *Denari v. Superior Court*, 215 Cal.App.3d 1488 (1989).

These names cannot be divulged, nor can these individuals be contacted without a court order. Defendant will produce documents to verify proper classification, or improper classification, either "booked in error" or "wrong person selected," on or before June 17, 2011.

## IV.

## PARTYS' CONTENTIONS

A.   **Plaintiff's Contentions:**

The law is clear that during the pre-certification stage, Plaintiff is entitled to the contact information for putative class members. In order to litigate this class action, Plaintiff must have access to information demonstrating who the victims of mistaken identity booking, detention and incarceration are and whether they were treated similarly

7

by Defendants for the purposes of class certification. The only way to accomplish this is by contacting and speaking directly with the putative class members.

In the instant class action, the correct standard to be used in determining whether plaintiff is entitled to the putative member contact information is defined by the case *Breed v. United States District Court*, 542 F.2d 1114 (9th Cir. 1976) and its progeny. Under this standard, the court is to weigh the defendant's concern with protecting the privacy interests associated with the names and addresses of the third-parties against the plaintiff's interest in discovering the information for the purpose of proving their case. *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), citing *Breed, supra*, 542 F.2d at 1115. Although the federal courts recognize that third-parties have a privacy interest in not having their contact information disclosed, plaintiffs may overcome these interests by showing the necessity of obtaining this information and the relevancy to the plaintiff's case. *Id.* at 551-552 and *Tomassi v. City of Los Angeles*, 2008 WL 4722393, *3 (interior citations omitted). The relevancy requirements are to be broadly construed. *Id.* at 551.

In *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 S.Ct. 2193, (1981), the United States Supreme Court set forth a deferential rule for Rule 23 class actions which enables plaintiffs' counsel to communicate with putative class members for the purposes of pre-certification information gathering. In this district, where the contact information sought is that of putative class members, the courts on balance order that the information be provided. *Putnam v. Ely Lilly and Co.*, 508 F.Supp.2d 812, 813 (C.D. Cal. 2007). This is

8

due to Plaintiffs' compelling need for the information in order to proceed as a class. "Through [access to contact information of the putative class members], plaintiffs may be able to evaluate the number of potential class member, the typicality of their claims to those of other claimants (and, therefore, their ability to represent other claimants adequately) and whether common questions of law or fact exist..." *Babbitt v. Albertson's, Inc.*, 1992 WL 605652 *3 (N.D. Cal. 1992) (court ordered production of E.E.O.C. and D.F.E.H. files and contact information of putative class members). Courts have long recognized that the need for disclosure is especially compelling in class actions "where the information to be disclosed concerns not disinterested third parties, but rather potential plaintiffs themselves" because the "information must be disclosed to enable plaintiff to proceed..." *Ibid.* at 814.

Furthermore, contact information of putative class members is generally discoverable because said disclosure does not cause an undue intrusion into the personal lives of the third-parties. "Such disclosure involves no revelation of person or business secrets, intimate activities, or similar private information, and threatens no undue intrusion into one's personal life, such as mass-marketing efforts or unsolicited sales pitches." *Pioneer Elecs. (U.S.A.) Inc. v. Superior Court*, 40 Cal.4th 360, 53 Cal.Rptr.3d 513, 150 P.3d 198, 206 (Cal. 2006). In this instance, the intrusion is even less because in many instances the contact information is already part of public record.

Defendants' reliance upon *Denari v. Superior Court of Kern County*, 215 Cal.App.3d 1488 (1989) is misplaced for numerous reasons. First, *Denari* is based upon

California state standards of privacy which are different and more stringent than the federal standards. The holding in *Denari* is clearly based upon privacy rights which are defined by California state case precedent, not federal precedent. Here, the standard is to be defined by federal law. Second, assuming *arguendo* that state law is to be applied, which it is not, the contact information sought in *Denari* is that of percipient witnesses, not potential class members, meaning that the privacy rights invoked as well as the importance of disclosure of the information are fundamentally different between the two cases.

In *Denari*, the plaintiff alleged that deputies used excessive force on her during the booking process. *Id.* at 1491. As part of her case, the plaintiff requested the names, last known addresses and telephone numbers of percipient witnesses who had been booked at the same time as her. *Id.* at 1492. The defendants objected to production in pertinent part on the basis of the witness' privacy rights. *Id.* The plaintiff argued that because she had alleged a federal claim under 42 U.S.C. § 1983, the federal privacy standard should be applied. In rejecting this argument, the court specifically noted that state privileges "are not given force in a federal action pursued in a federal court." *Id.* at 1495. Although federal courts give "some weight to privacy rights that are protected by state constitutions or state statutes... ultimate responsibility for deciding how much weight to ascribe to such interests, and how that weight compares with the significance of competing interests, must reside with the federal courts." *Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Cal. 1987).

In addition to Plaintiff's arguments set forth above demonstrating that Plaintiff is entitled to the contact information of the putative class members, Plaintiff is further entitled to the booking and release records of those putative class members because such information is necessary to determine whether the individual fits within the class definition. The information sought in those records is also relevant to certification issues including numerosity, commonality and typicality. From the records, Plaintiff can discern whether each putative class member made complaints about the misidentification, whether each complaint was treated by Defendants in the same manner, or whether they were uniformly ignored. The records will further show the length of the stay in jail and the cause of the eventual release of the inmate. Plaintiff needs this information to proceed with his certification motion. Plaintiff is willing to enter into a protective order with Defendants in order to protect against disclosure of irrelevant materials through the use of redactions, if necessary.

B. **Defendant's Contentions:**

Defendant argues that inmates have a protected constitutional right of privacy in their embarrassing life station. Both California and Federal precedent make protection of a person's privacy and identity a protected interest. If a former inmate's employer, family or friends discovered that he or she had been incarcerated, it could cost him or her those associations. There is an unspoken societal prejudice against persons charged with crimes, incarcerated or convicted.

The leading California decision is *Denari v. Superior Court*, 215 Cal. App. 3d

1488, 1498-1501(1989). Under it, a jail is bound at its peril not to accede to civil discovery demands which seek the revelation of inmates' names. In *Denari*, the plaintiff was an inmate who claimed that excessive force by guards broke her arm. She sought the names, addresses and phone numbers of inmate witnesses. The trial court denied the request, and the appellate court affirmed. The appellate opinion noted that in several different situations, appellate courts have accorded standing to litigants who are the recipients of discovery demands to assert the privacy rights of third persons who are not present before the court who would be affected by obedience to the discovery demands.

The *Denari* Court relied principally upon a United States Supreme Court decision, *Whalen v. Roe*. That decision is the common progenitor of closely related federal appellate precedent, such as *Herring v. Keenan*, 218 F.3d 1171(10th Cir. 2000). At 1175, the *Herring* court discussed what it termed governmental revelation of personal matters. In *Herring*, the right vindicated, though qualifiedly immune, was the penumbra of the provisions in the Bill of Rights which shield citizens from outsiders knowing private matters. *Herring* involved disclosure of a probationer's contraction of a loathesome disease.

A separate reason for not authorizing contacting the inmates falling within the discovery parameters is the easy availability of a fully legitimate public record which would include such individuals. Plaintiffs, in this litigation, have already served records subpoenas upon the Ventura Superior Court, which has responded. (See Declaration of Brian A. Vogel, ¶ 7 and 8.) This discovery is of fully public records, not privileged in any

way. The subpoena demanded the identities of all persons whose docket disposition entries was wrong defendant. That would encompass the subject matter of this litigation. If a party can obtain the information which it seeks by both privileged and unprivileged methods, the latter is infinitely preferable.

IT IS SO STIPULATED.

Dated: June 16, 2011.          LAW OFFICES OF ALAN E. WISOTSKY


By: /s/ Jeffrey Held
JEFFREY HELD
Attorneys for Defendants County of Ventura, Ventura County Sheriff's Dept. and Ventura County Sheriff Bob Brooks


Dated: June 16, 2011.          THE LAW OFFICES OF BRIAN A. VOGEL, PC


By: /s/ Brian Vogel
BRIAN A. VOGEL
Attorney for Plaintiff Charles Velasquez

13