BRIAN VOGEL, SBN 167493
brian@bvogel.com
THE LAW OFFICES OF BRIAN A. VOGEL, PC
770 County Square Drive, Suite 104
Ventura, CA 93003
Telephone: (805) 654-0400
Facsimile: (805) 654-0326

Attorney for Plaintiff
CHARLES VELASQUEZ, individually and on
behalf of all others similarly situated.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES VELASQUEZ, an individual on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> THE COUNTY OF VENTURA, THE VENTURA COUNTY SHERIFF'S DEPARTMENT, VENTURA COUNTY SHERIFF BOB BROOKS, AN INDIVIDUAL, AND DOES 1-10 <br><br> Defendants. | Case No. CV10-10080 CBM(PWJx) <br><br> **VELASQUEZ V. COUNTY OF VENTURA CLASS ACTION** <br><br> **DECLARATION OF BRIAN A. VOGEL IN SUPPORT OF PLAINTIFF'S MOTION FOR: (1) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT; (2) CONDITIONAL CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT; AND (3) APPROVAL OF CLASS NOTICE AND METHOD FOR DISTRIBUTION OF NOTICE** <br><br> [Filed concurrently with Notice and Motion, Memorandum of Points and Authorities, and [Proposed] Order] |

1

I, BRIAN A. VOGEL, declare as follows:

1.     I am an attorney duly licensed and admitted to practice law in all courts of the State of California, including the United States District Court for the Central District of California.  I am the principal attorney with the law firm of the Law Offices of Brian A. Vogel, PC, counsel of record for Plaintiff Charles Velasquez in the above-entitled case.  I make this declaration based upon information personally known to me.  If called to do so, I could and would testify competently to the facts set forth below.

2.     Attached hereto as Exhibit 1 is a true and correct copy of the class settlement agreement in this matter ("Settlement Agreement").

3.     Throughout the litigation, I engaged in a thorough investigation of Plaintiff's and the class claims and potential recovery.  I propounded written discovery, including interrogatories, requests for admissions, and document requests on both Defendants Ventura County and VCSD.  I later served two additional document requests on Defendant VCSD.  I also noticed and prepared for the depositions of six individuals involved in Plaintiff's incarceration as well as Defendants' persons most knowledgeable on relevant areas such as VCSD booking policies and procedures and VCSD's use of the Ventura County Integrated Justice Information System ("VCIJIS") computer system. (The VCIJIS system is a computer database which VCSO uses to store and retrieve information on all individuals who are booked and incarcerated in VCSO jail facilities. VCIJIS also stores the computerized records for the Ventura County Superior Courts.) These depositions were scheduled for August 8-10, 2011, but did not occur because the

Parties settled the case at mediation. Defendants deposed Plaintiff on June 24, 2011 and Plaintiff's wife on July 22, 2011.

4.      Early on in the litigation, defense counsel informed me that Defendants had never tracked wrong defendant incidents and had no way to search their computer database in order to identify those incidents. Defendants stated that they had searched their records and had discovered only one potential class member. Given this information, I felt it was necessary to serve subpoenas duces tecum on other agencies who might have further information related to wrong defendant incidents in Ventura County.

5.      Accordingly, I served third party subpoenas on 34 California counties with populations of over 100,000 people, (Out of County Warrant or "OCW" subpoenas). The subpoenas requested identification of all of the individuals who, between December 30, 2008 and the present: (1) were transferred from the custody of the Ventura County Sheriff's Department to the receiving county pursuant to a warrant or warrants issued in the receiving county and (2) were thereafter released or discharged from custody based upon the warrant or warrants because they were determined not to be the wanted subject under the warrant and/or warrants.

6.      In response to the OCW subpoenas, I received very few Potential Settlement Class Member ("PSCM") names primarily because most of the responding Counties claimed either that they did not have a readily accessible database to distinguish between inmates received from Ventura County or any other County or that they had no way to distinguish between inmates who were transferred from Ventura County and Los

3

Angeles County because they all arrived in Los Angeles County Sheriff's Department

buses. In either event, most of the counties claimed that compliance would be too

burdensome because it would require review of all of the individual files of inmates

received from other counties in general, or Los Angeles County, (including Ventura

county transfers), in particular.

      7.      As part of the Settlement Agreement, VCSO agreed to provide a list of all

of the inmates who were transferred to another county during the class period. I have

received a partial list of the identifying information of 1,495 individuals and the counties

to which they were transferred. I reissued third party subpoenas to those jurisdictions

identified in the partial list and included the identifying information of the inmates who

were transferred from Ventura County. Responses are due October 7, 2011. I expect to

have complete responses to these subpoenas by the end of October.

      8.      On May 12, 2011, I also served two separate third party subpoenas on the

Ventura County Superior Court Records Department and the agency responsible for

maintaining the computerized records of the Ventura County Superior Court, i.e. the

County of Ventura Information Systems Department.

      9.      The first subpoena requested court records for any criminal case during the

class period in which the reason on calendar or calendar event was "Wrong Defendant" or

"WDEF," ("Wrong Defendant" subpoenas). This Ventura County Superior Court code is

used when an attorney or defendant places a case on calendar because the individual

claims that he or she is not the proper defendant in the case or the individual, after a hearing, is found by the court not to be the proper defendant in the case.

10.    The second subpoena requested court records for any criminal case during the class period in which one of the offenses charged in the complaint, indictment or information was either a misdemeanor or felony violation of Penal Code section 529, 529(1), 529(2) or 529(3) (False Personation of another), ("Identity theft" subpoenas).

11.    In response to the Wrong Defendant subpoenas, I received a list of 507 individuals who were potential class members.  I also received a list of 97 names from Defendant VCSD who were identified by VCSD as being "booked in error".  In an effort to identify which, if any, of the individuals from this list were verifiable class members, I hired independent contractors who spent a total of 85 hours in the Ventura County Superior Court clerk's office identifying and gathering information on potential class members.  I myself spent 20 hours engaging in the same type of investigation.  I also spent 38 hours comparing VCSO and VCIJIS files with my public records and subpoena information.

12.    Throughout the discovery phase, I made numerous attempts to meet and confer in person and via correspondence with opposing counsel regarding issues arising from Defendants' discovery responses and document production.  I attempted to resolve these issues informally and sent several meet and confer letters.  Although we were able to work out most of the discovery issues, Defendants refused to provide the contact information for the putative class members.  As such, Plaintiff filed a Motion to Compel

on this issue. Magistrate Judge Walsh heard and granted the motion in Plaintiff's favor on June 30, 2011.

13.    After receiving the contact information on the list of 97 individuals from VCSD, my firm sent a cover letter and questionnaire in both English and Spanish to those individuals. I also sent similar letters and questionnaires to the 118 individuals on the Wrong Defendant subpoena list who had been identified by my staff as potential class members. The letter encouraged the individuals to fill out the questionnaire and contact my firm if they believed they were in the class. As a result of this mailing, I received approximately 35 responses, and of those responses, only six were verified as PSCMs. This is a response rate of a little over 16% and, of the responders, approximately 3% fit the class definition. In order to achieve a reasonable estimate of the likely response rate to class notice in this litigation, I researched prisoner's rights class action response rates and found *Boone v. City of Phila.* 668 F.Supp.2d 693, 703 (E.D. Pa. 2009) (noting that 15% of class members had filed claims) and *McBean v. City of New York* 233 F.R.D. 377, 382 (S.D.N.Y. 2006) (noting that 11% of class members had filed claims). I also received emails from experienced litigators in civil rights class actions involving jail inmates. Howard Friedman indicated a response rate of 27% in recent litigation in Massachusetts. Barrett Litt indicated a response rate of 21% in recent litigation in Kern County and he also attached a declaration which he submitted in a recent case describing response rates in overdetention and strip search class actions as follows:

13.6% in *Craft v County of San Bernardino*, Case No. 05-CV:539 (C.D. Cal.);

6

13.3% in *Williams v. County of Los Angeles*, Case no. 2:97-CV-0382-CW (C.D. Cal.);

14.4% in *Bynum v District of Columbia*, Case No. 02-CV:956 (D.D.C. 2006).

A true and correct copy of the declaration of Barrett Litt is attached hereto as Exhibit 3.

Based upon my response rate of 16% from a limited sample in this litigation and the

information I received from my research and contact with other experienced class counsel

in this area, I assumed an estimated response rate of between 15% and 25% for my

negotiations with opposing counsel.

14.    Through discovery on this matter, the Parties observed that the average time

a putative class member spent in jail because of a mistaken identity incarceration was

three days or less, usually because the individual would be arraigned within three days

and the mistaken identification would usually become apparent at the individuals'

arraignment hearing and the person would be released.  Given this average, the Parties

agreed that a reasonable amount per day in jail was approximately $1,000.  As part of my

investigation in this matter, I sent out letters and emails to Ventura County deputy public

defenders and local colleagues and collected declarations attesting to the number of times

they had observed mistaken identity incarceration incidents.  Based upon this research,

discovery and investigation, I estimate that the total number of mistaken identity

incarceration incidents during the Class Period to have been approximately 100.

Although there were many more mistaken identity incarceration incidents during the class

period, the majority of these potential claimants were also in custody for other, legitimate

reasons and will not qualify as ICMs under the terms of the settlement agreement.  Given

anticipated difficulties in contacting PSCMs and an anticipated response rate of 25% or less, I negotiated a damages award of $3,000 per incarceration incident, which, in my judgment, will likely result in a greater benefit, on average, to each qualified ICM than he or she would received if a different measure of damages was used, e.g. as $1,000 per day for each day in jail.  To determine an appropriate damages award, I reviewed recent class action settlements involving jail inmates consisting of either strip searches, overdetention claims, or both, as follows:

*Gamino v. County of Ventura,* Case No. 02-CV:9785 (C.D. Cal.)

    $250.00, $650.00, $2,300 or $3,000 per claimant depending on circumstances

*Craft v County of San Bernardino*, Case No. 05-CV:539 (C.D. Cal.)

    $1,217.88 per claimant ($25,500,000÷20,938 claimants);

*Williams v. County of Los Angeles*, Case no. 2:97-CV-0382-CW (C.D. Cal.)

    $735.09 per claimant ($27,000,000÷36,730 claimants);

*Bynum v District of Columbia*, Case No. 02-CV:956 (D.D.C. 2006)

    $3,213.71 per claimant ($12,000,000÷3,734 claimants).

    15.    Throughout the litigation, I have made many attempts to identify putative class members, outside of and in addition to formal discovery procedures.  Specifically, I gave an interview about the case which was published on the front page of the Ventura County Star on May 29, 2011.  I received several calls from putative class members as a result of the article.  I also sent out letters and emails to Ventura County deputy public defenders as well as colleagues who practice in Ventura County Superior Court

courtrooms where "wrong defendants" would have appeared during the statute of limitations period. I also interviewed deputy public defenders and collected declarations stating that they had observed wrong defendant incidents occurring in arraignment court and that it has been a recurring problem for years. Unfortunately, the Ventura County Public Defender's Office had no method of tracking these incidents.

16.     Identifying and contacting the putative class members has proven to be difficult and our searches and sincere efforts have not produced the number of identified class members we first anticipated. I believe I have made my best efforts to turn every stone in an effort to locate these individuals. I have also made my best efforts to review and analyze the information and documents which we have been able to gather in order to come to a reasonable estimate as to the actual number of class members actually existing. Based upon this research, discovery and investigation, I estimate that the total number of mistaken identity incarceration incidents during the Class Period to be approximately 100. As noted above in paragraph 13, my best estimate of an anticipated response rate to class notice in this litigation was between 15% and 25%. The parties used these estimates to agree upon a damages claim limitation of 40, a number well above the expected number of anticipated claims. Some claimants may have suffered two, or even three incarceration incidents, so it was necessary to have a sufficient cushion to account for this possibility.

17.     In addition, the parties are continuing their efforts to attempt to ascertain all of the class members. Specifically, the parties have agreed that within 30 days of the full execution of the Settlement Agreement, I will meet with a VCSO representative for

up to 40 hours to review the booking records for the individuals identified in wrong defendant and identity theft lists.  Further, VCSO and I will continue our efforts to identify those wrong defendant incidents which occurred on out of county warrants during the applicable time period.  In recognition of the difficulty encountered during the litigation in both locating and contacting PSCMs, the Parties have agreed to a lengthy claims period of 120 days as well as substantial advertising over both radio and television in order to ensure that sufficient notice of the Settlement is given to the class members.

18.     The Settlement Agreement in this matter is the result of months of arm's length negotiations between qualified and competent counsel.  On May 9, 2011, Defendants served Plaintiff with an F.R.C.P. Rule 68 Offer.  Although Plaintiff rejected the offer as inadequate, the Parties used the Rule 68 Offer as a roadmap during the remainder of the negotiations and mediation.  At the outset, VCSO was willing to stipulate to injunctive relief as it had become readily apparent that their procedures were inadequate to prevent incarceration incidents and VCSO intended to remedy the problem.  In addition to the information exchange described above, opposing counsel and I discussed the merits of the case and potential liability on numerous occasions.  I also consulted with other experienced civil rights and class action attorneys.  The parties continuously engaged in settlement discussions beginning late April, 2011.  On April 28, 2011, I met with defense counsel and Defendants' risk management employees to open the negotiations.

19.     The parties mediated the case with Louise LaMothe, a preeminent mediator

with a wealth of experience litigating class actions as an attorney and mediating class

actions as a mediator.  The mediation lasted four full days on July 5 and 6 and August 5

and 6, 2011.  Plaintiff Charles Robert Velasquez attended all days of mediation.  Heather

A. Quest, Esq., and I also attended as Class Counsel.  In attendance for the defense were

Defense Counsel, Alan E. Wisotsky and Jeffrey Held, VCSO Assistant Sheriff Gary

Pentis, jail commanders Linda Oksner and Guy Stewart, and Charles Pode and Jacalyn

Cohen from the Ventura County Risk Management Department.  In preparation for the

mediation, in addition to information exchange, the Parties submitted detailed mediation

briefs and a list of issues in contention.  Class Counsel presented a lengthy powerpoint

presentation during the mediation.   Since the last day of mediation, counsel for the

Parties have spent approximately 100 hours revising the agreement and participating in

follow-up discussions to finalize the details of the Settlement Agreement.  Ms. LaMothe

participated in several of these discussions.  The final settlement terms set forth in the

Settlement Agreement were not agreed upon until another 7 hours had been spent in

further face to face negotiations.

20.     I did not agree to the Settlement until I believed that I possessed sufficient

information to make an informed judgment regarding the likelihood of success on the

merits and the results that could be obtained through further litigation and trial.

21.     On the injunctive relief portions of the Settlement Agreement, the choice

and content of all the forms related to the Article 51 revisions were thoroughly discussed

and negotiated between the Parties.  Attached to the Settlement Agreement as Exhibit A

11

is a copy of VCSO's revised Divisional Policy, Article 51 which now provides that "[a]ll persons booked into the Ventura County jail shall be enrolled into VCIJIS using the Single Print Index (SPI) biometric device." (SA, ¶ 34, 36(B), Exh. A)  This system insures that each person booked into the jail is assigned one, and only one, unique identification number based upon his or her fingerprints.  The Criminal Identification Index or "CII" number generated by a computerized analysis of the inmate's fingerprints by the California Department of Justice is then used as the primary means to identify the individual named on the arrest warrant.

22.    Based my own independent investigation and evaluation of the matter after meaningful discovery and negotiations, I am of the opinion that the settlement with Defendants for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate, and is in the best interests of the class in light of all known facts and circumstances.  I recognize that continuing to litigate and trying this Action against Defendants through possible appeals could take several years and could result in great expense to all parties.  I have also taken into account the uncertain outcome and risk of litigation, especially in complex actions such as this Action.  I am mindful of, and recognize the inherent problems of proof of each claim and the alleged defenses asserted in the Action.  Defendants and defense counsel have informed me that they also agree that the settlement is fair and in the best interests of the putative class members, and as such, do not oppose this motion.

23.    I am informed and believe that Plaintiff Charles R. Velasquez's interests are

not antagonistic to the class and he has always been ready and willing to prosecute his claims and the class claims vigorously.  The Plaintiff Representative shall receive a one-time only lump sum total payment of $55,000.  This figure is comprised of four components as follows:

A. $ 3,000 in general (non-economic) damages for emotional distress.

B. $12,000 in reimbursement is for attorney fees and costs incurred in litigating Penal Code section 851.8 petitions for factual findings of innocence and judicial clearance orders in Los Angeles and Santa Barbara Counties.

C. $20,000 for his past and future medical and psychiatric treatment.

D. $20,000 for his role as Plaintiff representative.

I am of the opinion that Plaintiff's representative fee of $55,000 is well within the range of what is acceptable.

24.     I am informed and believe that I have the requisite experience and knowledge to act as Class Counsel in this matter.  I am considered by my peers to be a skilled attorney, and I have many years experience in criminal and civil law and am competent to represent the interests of the class members.

25.     I received my Juris Doctorate degree from Loyola Law School in Los Angeles, California in 1993.  I was admitted to the State Bar of California in 1993.  Following my admission to the California Bar, I was employed as a deputy public defender and then senior deputy public defender in Ventura County.  I worked in the Public Defender's office for 14 years.  During the time that I worked as a public defender,

13

I obtained a substantial amount of training and experience in the investigation, preparation and presentation of evidence, motion practice, trial planning and practice, and client relations.  I was the lead attorney in approximately 70-100 jury trials of which approximately half were felony trials.  I represented clients charged with serious crimes including, but not limited to, capital murder, rape, robbery, mayhem, kidnaping, assault with a deadly weapon, and complex fraud and embezzlement cases.  In addition to practical litigation and trial experience at the Public Defender's Office, I was exposed to, and learned a great deal about police and sheriff department policies and practices, especially in the Ventura County area.

26.     In 1998, I received the Ventura County Criminal Defense Bar Association Crime Lab Crusader Award.  This award arose from my role as lead attorney in a criminal case in which hundreds of individual DUI cases were consolidated for special hearings relating to *Brady* claims and evidentiary issues arising from deficiencies in the Ventura County Sheriff's Department Crime Lab forensic alcohol program.   In 2002, I received the Ventura County Criminal Defense Bar Association Richard Erwin Award which is the equivalent of "Trial Lawyer of the Year" for the defense bar in Ventura County.  This award arose from my successful motion to dismiss a capital murder with a rape special circumstance indictment by the Ventura County Grand Jury because the Ventura County Superior Court's "blue ribbon" grand jury selection procedure resulted in the systematic underrepresentation of women on the grand jury in violation of the Fourteenth Amendment guarantee of due process, the Sixth Amendment guarantee of trial by a fair

14

and impartial jury and the fair cross-section requirement of both the Sixth and Fourteenth Amendments. This litigation resulted in the dismissal of dozens of indictments in very serious criminal cases and further resulted in a wholesale change in the manner in which the Ventura County Superior Court selected criminal grand juries.

27.   I am certified as a Specialist in Criminal Law by the State Bar of California Board of Legal Specialization. I am also certified as a Specialist in Criminal Trial Advocacy by the National Board of Trial Advocacy.

28.   After leaving the Public Defender's Office, I formed the Law Offices of Brian A. Vogel, PC in Ventura, California in 2007. I am a sole practitioner. Although at first, I primarily represented criminal defendants, I have expanded my practice to include civil litigation with an emphasis on civil rights cases brought pursuant to 42 U.S.C. § 1983. I have successfully litigated numerous police misconduct actions and have recovered hundreds of thousands of dollars by way of settlement, attorney's fees award and jury verdict.

29.   Before the Complaint in this matter was filed, I associated an experienced class counsel, Heather A. Quest, to assist me on this matter. I associated Ms. Quest because she has substantial experience litigating and negotiating settlements on plaintiffs' wage and hour class actions in both federal and state court. Ms. Quest has provided me with substantial assistance in the prosecution of this matter, particularly with the class aspects of the matter and the requirements under Federal Rule Civil Procedure Rule 23 and related Central District local rules.

30.     As of the date of this declaration, my firm has incurred almost $175,000 in attorneys' fees and costs related to the litigation of this matter.  My duties as Class Counsel will require many more hours of attorney time prior to final approval of the Settlement Agreement.  I will file a petition for attorneys' fees and costs concurrently with the filing of the Motion for Final Approval of the Settlement Agreement requesting $175,000 in fees and costs as provided for in the Settlement Agreement.

31.     The parties have agreed that the County of Ventura will be settlement administrator and that they will complete the administration of the settlement.  The Parties have further agreed that Louise A. LaMothe will be Special Master regarding disputes which may arise from the implementation of the Settlement Agreement.  Ms. LaMothe has agreed to act as special master and has agreed to file a declaration as required by FRCP 53 in the near future.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed this **20** th day of September, at Ventura, California.

Brian A. Vogel, Esq., Declarant

16

# EXHIBIT 1

1  BRIAN VOGEL, SBN 167493
2  brian@bvogel.com
   THE LAW OFFICES OF BRIAN A. VOGEL, PC
3  770 County Square Drive, Suite 104
   Ventura, CA 93003
4  Telephone: (805) 654-0400
5  Facsimile: (805) 654-0326

6  Attorney for Plaintiffs
7  CHARLES VELASQUEZ

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12 CHARLES VELASQUEZ, an individual )    Case No. CV10-10080 CBM(PWJx)
   on behalf of himself and all others  )
13 similarly situated,                   )    **VELASQUEZ V. COUNTY OF**
                                         )    **VENTURA CLASS ACTION**
14                                       )
            Plaintiff,                   )
15     vs.                               )    **CLASS ACTION SETTLEMENT**
                                         )    **AGREEMENT PRESENTED TO**
16 THE COUNTY OF VENTURA, THE            )    **THE COURT FOR PRELIMINARY**
   VENTURA COUNTY SHERIFF'S             )    **APPROVAL**
17 DEPARTMENT, VENTURA COUNTY            )
   SHERIFF BOB BROOKS, AN               )
18 INDIVIDUAL, AND DOES 1-10            )
19                                       )
20          Defendants.                  )
                                         )
21 _____

22

23

24     Plaintiff Charles Velasquez, individually and on behalf of the settlement class

25 defined herein; Defendant Bob Brooks, individually and as (former) Sheriff for the

26 Ventura County Sheriff's Office (previously named the Ventura County Sheriff's

27 Department), Defendant Ventura County Sheriff's Office ("VCSO") and Defendants

28

                                    1

County of Ventura ("Defendants"), by and through their respective counsel, hereby

submit the following Settlement Agreement ("Settlement Agreement")

## RECITALS

**WHEREAS**, Plaintiffs filed the above referenced action in United States District

Court for the Central District of California ("Court") on December 30, 2010; and

**WHEREAS**, Plaintiffs asserted they represented a class of persons who spent any

amount of time following master or supplemental booking, irrespective of duration, in a

County of Ventura Sheriff's Office's Jail based only upon a warrant or warrants intended

for another individual, during the period of December 30, 2008 until the date of the full

execution of the Settlement Agreement; and

**WHEREAS**, Plaintiff Representative Velasquez alleged the following claims for

relief in the U.S. District Court for the Central District of California:  (1) Violation of

Civil Rights: Unreasonable Seizures and False Imprisonment (42 U.S.C. § 1983/4th and

14th Amendments); (2) Violation of Civil Rights: Deprivation of Liberty (42 U.S.C. §

1983/14th Amendment) (3) *Monell* Claims on the 42 U.S.C. § 1983 claims; (4) False

Imprisonment; (5) California Civil Code § 52.1:  Interference with Exercise of Civil

Rights by Unreasonable Detention; and

**WHEREAS**, the parties have agreed that the temporal limits of the class were

December 30, 2008 to the date of the full execution of the Settlement Agreement; and

**WHEREAS**, Defendants deny that they have done anything wrong whatsoever,

deny all liability to the defined class and do not concede any infirmity in the defenses that

they have asserted or intend to assert in these proceedings, but are cognizant of the

2

1   expense to the taxpayers and diversion from law enforcement service of further litigation;

2   **WHEREAS**, the Parties to this Settlement Agreement believe that settlement is in

3   the best interests of the parties and will avoid further lengthy and costly litigation;

4

5   **THEREFORE**, the Parties agree as follows:

6   **DEFINITIONS**

7

8   1.      "Administrator" means the County of Ventura or its designee.

9   2.      "Identified Class Member" ("ICM") means a person (or his or her assignee,

10  heir, or lienor) who spent any amount of time following master or supplemental booking,

11  irrespective of duration, in a jail operated by the Ventura County Sheriff's Office

12  ("VCSO") based only upon a warrant or warrants intended for another individual, during

13  the period of December 30, 2008 until the date of the full execution of the Settlement

14

15  Agreement.

16  3.      "Possible Settlement Class Member" ("PSCM") means a person who might

17  have spent any amount of time following master or supplemental booking, irrespective of

18  duration, in a County of Ventura Sheriff's Office's Jail based only upon a warrant or

19  warrants intended for another individual, during the period of December 30, 2008 until

20  the date of the full execution of the Settlement Agreement.  Class Counsel and VCSO will

21  continue to diligently review all available records of those persons who are:

22

23

24  (1)     Identified in the Ventura County Integrated Justice Information

25  System ("VCIJIS") described in paragraphs 5(A)(1)and (2)(a) and (b);

26

27  (2)     Are later identified as a result of their response to Class Notice, or

28  (3)     Are later identified as a result of the responses to third party

3

subpoenas to other California Counties who received inmates from VCSO jail facilities based on arrest warrants issued by their jurisdiction. PSCMs will have to have their claims validated prior to receiving any payment under the Settlement Agreement. Class Notice need not be mailed to any individual who cannot qualify as an ICM.  If a PSCM has his or her claim validated by the Administrator, he or she becomes an Identified Class Member.

      4.    "Incarceration Incident" means any amount of time following master or supplemental booking, irrespective of duration, spent in the Ventura County Jail System based only upon an arrest for a warrant or warrants intended for another individual made during the temporal limits of the class, December 30, 2008 until the date of the full execution of the Settlement Agreement.  However, if during the booking process it was determined that an individual was not the subject of the arrest warrant and that individual was promptly released from custody on that warrant, the detention will not qualify as an "Incarceration Incident."

      A.    The parties agree that a compensable  "Incarceration Incident" within meaning of this Settlement Agreement requires that the ICM had completed the booking process and was thereafter held on a warrant or warrants intended for another person.

      B.    Any ICM may, permissibly claim for multiple Incarceration Incidents during the temporal limits of the class, December 30, 2008 until the date of the full execution of the Settlement Agreement.  However, if the total number of compensable Incarceration Incidents exceed 40, the total settlement fund shall be

4

redistributed on a pro-rata basis per incident, not exceeding $120,000.  If the incident claims are fewer than 40, the balance of the class settlement fund will automatically revert to the County of Ventura.

5.      The "Settlement Agreement Database" ("SAD") means the information provided in hard copy and/or electronic form by the Defendants and Class Counsel to the Administrator.

A.      The SAD shall consist of the following:

(1)      A list of names of individuals provided by Class Counsel to the Administrator who have contacted Class Counsel and who Class Counsel believes to be PSCMs;

(2)      A list of names provided by Class Counsel derived from Class Counsel's discovery from third party subpoenas to the Ventura County Superior Court after review of the list by VCSO and Class Counsel as described in subsection (c).

(a)      Ventura County Superior Court case name and case number for any criminal case from December 30, 2008 to present which appeared on calendar in Ventura County Superior courtrooms 10, 11, 12, 13, 14, or 37 for any criminal case in which the reason on calendar or calendar event was "Wrong Defendant" or "WDEF," and;

(b)      The victim listed in the complaint in any Ventura County Superior Court criminal case from December 30, 2008 to present in which one of the offenses charged in the complaint, indictment or information was either a misdemeanor or felony violation of Penal Code section 529, 529(1), 529(2) or 529(3)

5

(False Personation of another).

        (c)    Within 30 days of the full execution of the Settlement Agreement, Class Counsel and a representative from VCSO shall meet for up to 40 hours to review the booking records for the individuals identified in the lists from paragraphs (A)(2)(a) and (b) in order to exclude individuals who will not qualify as "ICM's" because:

        (i)    The person who was the proper subject of the warrant was never booked, fingerprinted and LiveScanned; or

        (ii)    The individual identified in the list was never booked, fingerprinted and Livescanned; or

        (iii)    The individual identified in the list was not held in custody based only upon the warrant intended for another, but was held based upon another legitimate charge or detainer.

        (3)    A list of individuals who were booked into a VCSO jail on an out of county warrant and then transferred from the custody of VCSO to the custody of another California County which issued the warrant.

        (a)    Within 10 days from the full execution of the Settlement Agreement, VCSO shall provide Class Counsel with a list of individuals whose booking disposition code was "out of county warrant" "OCW."

        (b)    Within 10 days from the date on which Class Counsel receives the list from VCSO, Class Counsel will assist VCSO in a computer records search to ascertain the identity of the counties which issued the warrants.

(c)     VCSO shall allow Class Counsel up to 40 hours to complete the ascertainment process.

(d)     VCSO shall use its best efforts to comply with this provision. However, only substantial noncompliance will function as a material breach of this paragraph of the Settlement Agreement.

(e)     Within 15 days of completion of the ascertainment process, Class Counsel shall issue subpoenas to all California Counties who are identified in the list.  The subpoenas will request identification of all of the individuals who were received into the custody of the other County and later released from custody because of a determination that they were not the subject wanted on the warrant.

B.     The SAD shall consist of, to the extent practicable, the name, address at time of booking, date of birth, date(s) of arrest and the case number(s) of the ICM arrested during the Class Period and booked at the Ventura County Jail.

C.     Class Notification as described in paragraph 49 et seq. shall begin within 30 days after the SAD is completed.  In no case shall class notification begin more than 120 days after preliminary approval.  The parties shall agree that the SAD has been completed.  If the parties are unable to agree that the SAD has been completed, the dispute shall be submitted to the Special Master pursuant to paragraph 68.

D.     The SAD shall not be provided by the Administrator or Class Counsel to any person, entity, party or any ICM.  In order to protect the privacy interests of the PSCMs in the SAD, the parties agree that the SAD and the identities of the individuals identified therein is exempt from Freedom of Information Act and Public

Records Act requests.  The parties further agree that Class Counsel shall request, in the preliminary approval motion, implementation of this provision.

6. "LiveScan" means electronic fingerprinting of arrestees in a custody facility.  The electronic fingerprints are transmitted to the California Department of Justice in order to obtain identifying information including a personal identification number based upon the fingerprints.

7. The "Bar Date" is the date by which any ICM who wishes to receive payment pursuant to the Settlement Agreement must present his/her Proof of Claim Form (attached as Exhibit N), objections to this Settlement Agreement, or request to be excluded from the class (opt-out). The Bar Date shall be calculated as the close of business on the 120th day after the first day of mailing Class Notice (the time frame for which is up to three consecutive business days from beginning to end, as described in ¶ 50.)

8. "Class Notice" means the notice in a form substantially similar to that attached hereto as Exhibit I, and such other summary notice to be published in accordance with the terms of this Settlement Agreement.  The Class Notice will provide that all objections to the Settlement by anyone, including members of the Class, must be filed in the District Court and served upon all counsel of record by no later than the Bar Date.

9. The "Potential Settlement Class Member Letter" means the claim letter inquiry in a form substantially similar to that attached hereto as Exhibit O that will be provided to Possible Settlement Class Members as defined herein as part of the Class Notice.

8

10.     "Class Counsel" means Brian A. Vogel, The Law Offices of Brian A. Vogel, PC, 770 County Square Dr., Ste. 104, Ventura, CA 93003.  If, for any reason, Class Counsel is unable to perform his functions under this agreement, Class Counsel shall have the option to select alternate class counsel to perform his functions subject to notice to Defense Counsel and the approval of the court.  If Class Counsel is unable or unwilling to select alternate Class Counsel, the Special Master shall select a qualified alternate Class Counsel.  Either Class Counsel or the Defendants may notify the Special Master of the need for alternate class counsel in writing.  If the Special Master is unable or unwilling to select qualified alternate Class Counsel, the court shall do so.

11.     "Defense Counsel" means Alan Wisotsky and Jeffrey Held of Wisotsky, Proctor, and Shyer, 300 Esplanade Drive, Suite 1500, Oxnard, California, CA 93036.

12.     The "Class Period" is December 30, 2008 to the date of the signing of this agreement.

13.     The "Proof of Claim Form" means the Proof of Claim and Release Form required to be used to make a claim for payment under this settlement. A copy of the proposed Proof of Claim is attached as Exhibit N.

14.     The "Effective Date" means the date upon which a judgment entered by the Court approving the Settlement Agreement becomes final. The Judgment will be deemed final only upon expiration of the time to appeal or, if a Notice of Appeal is filed, upon exhaustion of all appeals and petitions for writs of certiorari and issuance of mandate.

15.     An "Opt-Out" is any person in the Settlement Class as defined herein, who presents a timely request for exclusion pursuant to the terms of this Settlement Agreement

9

(attached as Exhibit P).

16.    "Released Person" means the Defendants and their affiliates, subsidiaries, predecessors, successors, and/or assignees, together with past, present and future officials, employees, representatives, attorneys, and/or agents of the County of Ventura, VCSO, or any of them. "Released Persons" also includes any and all insurance carriers, and/or their representatives and attorneys, for the Released Persons.

17.    "Monitor" means a jail practices expert mutually agreed upon by the parties to monitor compliance with the policies and procedures which were agreed to by the parties and contained in this Settlement Agreement.

    A.    The parties shall agree upon a monitor within 30 days of the full execution of the Settlement Agreement.

    B.    In the event of the inability of the parties to agree upon a monitor, mediator Louise LaMothe (or her successor) shall select a qualified monitor within 60 days of the full execution of the Settlement Agreement.

    C.    If the Monitor is unwilling or unable to serve, the parties shall select a new Monitor; if the parties are unable to agree, the Special Master shall do so.

    D. Defendants shall pay the fees and expenses of the Monitor.

## DISCLAIMER OF LIABILITY

18.    This Settlement Agreement is for settlement purposes only, and neither the fact of, nor any provision contained in this Settlement Agreement or its exhibits, nor any action taken hereunder shall constitute, be construed as, or be admissible in evidence as any admission of the validity of any claim or any fact alleged by any

10

Plaintiff representative, ICM, PSCM or class member in either this action or in any other

pending or future action or of any wrongdoing, fault, violation of law, or liability of any

kind on the part of any Released Person or admission by any Released Person of any

claim or allegation made in this action or in any other action. Defendants deny all

allegations of wrongdoing and deny any liability to Plaintiffs, to any ICM, or to any

Possible Settlement Class Member. The parties have agreed that, in order to avoid long

and costly litigation, this dispute should be settled pursuant to the terms of this Settlement

Agreement, subject to the approval of the Court.

19.     Any opt-out is barred from using the fact or content of this settlement

resolution in any form or for any purpose.  An opt-out is not a third party beneficiary

within the meaning of this settlement agreement.

20.     This Settlement Agreement is subject to the approval of the Ventura County

Board of Supervisors.  The Board next meets on September 13, 2011.  Defendant's

representatives will recommend approval of the Settlement Agreement to the Board.

Once Board approval of the Settlement Agreement has been obtained, Class Counsel will

promptly file a motion for preliminary approval of the class.

21.     Conditional Certification of the Class:  The Parties stipulate to the

conditional certification of the Class as defined herein for settlement purposes only. As

set forth in Paragraph 22, the provision is void and all terms of the Settlement Agreement

are void if the Settlement is not approved by the Court. The parties further stipulate that,

for settlement purposes only, the Law Offices of Brian A. Vogel, PC may be appointed

Class Counsel and that Plaintiff Charles Robert Velasquez may be appointed Class

Representative.  The Parties herein stipulate that the class defined as: Those persons who

spent any amount of time following master or supplemental booking, irrespective of

duration, in a County of Ventura Sheriff's Office's Jail based only upon a warrant or

warrants intended for another individual, during the period of December 30, 2008 until

the date of the full execution of the Settlement Agreement.  The Parties agree that the

settlement class defined herein satisfies the requirements of F.R.C.P. Rule 23 (a) and (b).

Defendants' stipulation to this settlement class shall not be construed as an admission or

acknowledgment of any kind that any class should be certified or given class action

treatment.

     22.     Termination of Settlement Agreement:  The Settlement shall be void under

any of the following conditions:

          A.     The Defendants void the Settlement Agreement under paragraph 67;

          B.     The Court does not dismiss the Action with prejudice against

Defendants as provided for in the Settlement Agreement or does not approve one or more

of the terms of the Settlement Agreement, unless the disapproval is a mere, minor

modification;

          C.     Appellate review is sought and on such review the District Court's

decision is materially modified or reversed.

     23.     Court Approval of the Settlement: Subject to Defendants' approval, Class

Counsel shall be responsible for preparing and filing the Motion for Preliminary Approval

of the Settlement and the Motion for Final Approval of the Settlement. Class Counsel will

file the Motion for Preliminary Approval of the Settlement within 10 days after the

Settlement Agreement is fully executed.  Defendants then have 7 days to oppose the motion or file a notice of non-opposition.

A.    If the Settlement Agreement receives preliminary approval from the Court, the Final approval of the class settlement hearing shall be scheduled within 60 days following the end of the Bar Date, or at the earliest available time for the Court, whichever is later.

B.    Prior to the Final approval of the class settlement hearing by the Court, the Parties will submit a proposed Final Order (i) certifying the Class for settlement purposes only, (ii) finding the settlement fair, reasonable, and in the best interests of the Class Members, (iii) approving Class Counsel's application for an award of attorneys' fees and costs, and (iv) for a final order dismissing with prejudice the Complaint in this Action against all named and fictitious Defendants and releasing and barring any further actions by Class Members who do not opt-out of the settlement.

24.    An ICM who complies with the requirements set forth in this Settlement Agreement will be paid a specified sum controlled by the settlement distribution disbursement process set forth herein.  Such payment shall be in full satisfaction of all known and unknown claims of that ICM.

25.    By partaking in the settlement herein described, an ICM knowingly agrees to permanently and prejudicially waive all of the following relating to any Incarceration Incident: all past, present and future: claims of violation of federal, state and international laws and treaties; special (economic) damages; general (non-economic) damages; attorneys' fees, whether of record, or not; liens of all description;

13

1   declaratory/equitable/injunctive relief; discovery rights, both as a litigant and as a member

2   of the public; class action participation; unknown rights, in that the ICM may have claims,

3

4   rights and causes of action (theories of recovery), the existence, nature and full extent of

5   which are currently unknown, but an unspecified portion of the payment amount stated in

6   ¶ 47(B) of this Settlement Agreement is intended to cover each ICM's unknown claims,

7

8   rights and causes of action, the ¶ 47(B) amount being a product of four days of vigorous

9   mediation negotiations; and administrative claims.

10       26.    The Settlement Agreement, as of the "Effective Date," resolves in full all

11  claims against the Released Persons by all of the ICMs, including the Plaintiff

12

13  representative, involving claimed violations of law or constitutional rights, including,

14  without limitation, their Fourth Amendment rights, their Fourteenth Amendment rights, or

15  any other federal, state or local law, regulation, duty, or obligation, or any other legal

16  theory, action or cause of action, which are based upon or could be based upon or arise

17

18  from the facts alleged in the lawsuit, i.e., claiming damages for an "Incarceration Incident"

19  occurring while in custody of VCSO.

20       27.    As of the "Effective Date", all ICMs, including the Plaintiff representative,

21

22  automatically waive all rights to any and all claims relating to "Incarceration Incidents" by

23  Released Parties under any theory or cause of action whatsoever under California state law

24  and federal law.  All ICMs will be given the option in the Class Notice Form (Exhibit I) of

25  being mailed a copy of the Settlement Agreement.

26

27       28.    The Settlement Agreement, together with its exhibits, contains all the terms

28  and conditions agreed upon by the Parties hereto regarding the subject matter of the instant

14

1    proceeding, and no oral or written agreements or communications entered into at any time,

2    before, during or after the execution of the Settlement Agreement shall be deemed to exist

3    or to bind the Parties hereto, or to vary the terms and conditions contained herein, except

4    as expressly provided herein.

5

6          29.    When the Settlement Agreement is final, the ICMs, including the Plaintiff

7    representative, hereby waive any and all rights to pursue, initiate, prosecute, or commence

8    any action or proceeding before any court, administrative agency or other tribunal, or to

9    file any complaint regarding acts or omissions by the Released Persons with respect to any

10   "Incarceration Incident" by Defendants that occurred or may have occurred during the

11   Class Period; and further, as it relates to this Release of all claims, expressly waive the

12   provisions of California Civil Code §1542, which provides that "a general release does not

13   extend to claims which the creditor does not know or suspect to exist in his or her favor at

14   the time of executing the release, which if known by him or her must have materially

15

16   affected his or her settlement with the debtor."

17

18         30.    Each ICM shall be deemed to have submitted to the jurisdiction of the

19   United States District Court for the Central District of California.

20

21         31.    The Settlement Agreement is subject to and conditioned upon: (1) the

22   occurrence of a Fairness Hearing conducted by the Court, (2) the Court's final approval of

23   the Settlement Agreement and, (3) the issuance of the final order and judgment of

24   prejudicial dismissal by the Court, providing the specified relief as set forth below.  The

25   relief shall be pursuant to the terms and conditions of the Settlement Agreement and the

26

27   Parties' performance of their continuing rights and obligations hereunder.  The Order and

28

15

Judgment shall be deemed final only upon expiration of the time to appeal, or if a

Notice of Appeal is filed, upon exhaustion of all appeals and petitions for writs of

certiorari or the expiration of the time to file such writ petition.  Such final Order

and Judgment shall:

        A.      Dismiss with prejudice in this or any other federal or state court all claims in the action as to the Released Persons including all claims for monetary damages, declaratory relief and injunctive relief, each side to bear their own costs and fees except as otherwise provided for in the Settlement Agreement;

        B.      Order that all ICMs are enjoined from asserting against any Released Person, any and all claims which any ICM had, has or may have in the future arising out of the facts alleged or which could have been alleged in the Complaint;

        C.      Release each Released Person from the claims which any ICM has, had or may have in the future, against such Released Person arising out of the facts alleged in the Complaint;

        D.      Determine that the Settlement Agreement is entered into in good faith, is reasonable, fair and adequate, and in the best interest of the Class; and

        E.      Reserve the Court's continuing and exclusive jurisdiction over the Parties to the Settlement Agreement, including Defendants and ICMs, to construe and enforce the Settlement Agreement in accordance with its terms for the mutual benefit of all Parties.

        32.     The Parties will take all necessary and appropriate steps to obtain preliminary and final approvals of the Settlement Agreement, and dismissal of the action

16

with prejudice, all parties bearing their own fees and costs unless otherwise set forth in the Settlement Agreement.  If the Court gives final approval of the Settlement Agreement, and if there is an appeal from such decision, the Defendants will not oppose Plaintiffs' efforts to defend the Settlement Agreement.

## RESOLUTION AND PAYMENT OF CLAIMS

33.     The parties succeeded in resolving all issues in this litigation on a class basis, subject to approval by the County of Ventura Board of Supervisors and the Court.

A.     The attorneys and parties attended four days of mediation with respected mediator, Louise LaMothe on July 5th and 6th, 2011 and August 4th and 5th, 2011.

B.     In attendance for Plaintiff was the named representative, Charles Robert Velasquez, and his attorneys, Brian A. Vogel and Heather A. Quest.  In attendance for the defense were VCSO officials Gary Pentis, Assistant Sheriff, Linda Oksner and Guy Stewart, jail commanders, as well as Defense Counsel, Alan E. Wisotsky and Jeffrey Held and Charles Pode and Jacalyn Cohen from the Ventura County Risk Management Department.

34.     The following Exhibits which are attached and incorporated into the Settlement Agreement constitute the majority of the agreed upon policies and practices of VCSO:

Exhibit A:     VCSO, Detention Services, Divisional Policy, Article 51, revised August 5, 2011, ("Article 51").

Exhibit B:     Warrant Notification Form A

Exhibit C:     Warrant Notification Form B

17

Exhibit D:    Notice of Warrant Misidentification template to be printed on VCSO official letterhead.

Exhibit E:    VCSO, Detention Services, Form entitled "Instructions To Obtain Judicial Clearance In Ventura County" with the attached Penal Code Section 851.8 Form.

Exhibit F:    VCSO, Detention Services, "Claim of Wrong Subject/Wrong Identity Arrest Warrant" Form.

Exhibit G:    VCSO, Pre-Trial Detention Facility Policy and Procedures Section 4, Chapter 2, Subsection D, entitled "Booking Identification Procedure".

Exhibit H:    INTENTIONALLY LEFT BLANK

Exhibit I:    The Class Notice Form

Exhibit J:    The Class Notice Form in Spanish

Exhibit K:    Content of Radio and TV ad in English

Exhibit L:    Content of Radio and TV ad in Spanish

Exhibit M:    Content of Newspaper Ad in English

Exhibit N:    Proof of Claim and Release Form in Spanish and English

Exhibit O:    Potential Settlement Class Member Letter in Spanish and English

Exhibit P:    Opt-Out Form

35.    VCSO agrees that Exhibit E, VCSO, Detention Services, Form entitled "Instructions To Obtain Judicial Clearance In Ventura County" with the attached Penal Code Section 851.8 Form, and Exhibit F, VCSO, Detention Services, "Claim of Wrong Subject/Wrong Identity Arrest Warrant" Form shall be translated into Spanish with

18

Spanish translation on the reverse side of the forms.

36.     On or before the "Bar Date," the parties have agreed that VCSO shall do the following:

A.     VCSO shall continue to abide by its existing policy set forth in Section 4, Chapter 2 "Booking Identification Procedure," Subsection D, as set forth in Exhibit G. It shall be the continuing practice of VCSO to verify the integrity of the data maintained in the VCIJIS system, including the removal of duplicative or erroneous information in individual computer files including the deletion of multiple and erroneous identifiers such as CII and FBI numbers.

1.     The VCSO employee responsible for verifying the integrity of the data in the VCIJIS system mentioned in Exhibit G at Subsection D, shall be responsible for completing the tasks described in paragraph 36(A).

2.     Priority will be given to those individuals who are currently in custody.

3.     Within 20 months of final approval of the settlement, VCSO shall have completed the review and correction of the VCIJIS records for individuals identified through discovery who potentially have corrupted VCIJIS files.

4.     VCSO shall retain paper files demonstrating the before and after screen prints for all VCIJIS records that have been corrected pursuant to paragraph 36(A)(3).

5.     These paper files shall be retained by VCSO for at least six months after the filing of the monitor's final report.

1          B.      As a result of mediation negotiations in this litigation, VCSO has

2    drafted and shall implement the policies and procedures set forth in Exhibit A.  Exhibit A

3    is Article 51 of the Detention Services Divisional Policy, 3 pages in length.  VCSO will

4    formally adopt Article 51 when the Settlement Agreement is fully executed.

5

6          C.      VCSO will create a new booking disposition code.  This code will

7    capture those individuals who will be issued a Notice of Warrant Misidentification Claim

8    Form, (Exhibit D) and it is subsequently determined by VCSO that the claim is valid.  In

9    each such case, the unique booking disposition code to be determined in the near future

10   will be entered into the VCIJIS system.

11

12         D.      VCSO training bureau shall develop and disseminate to county and

13   allied police agencies within Ventura County an informational training bulletin attaching

14   examples of documents officers might encounter in the field, such as Exhibit D, and the

15   business card size clearance notification given by the Court.

16

17         E.      VCSO will periodically review Article 51 in light of technological

18   advances in identification technology and will revise the policy as identification

19   technology improves.  Any and all future revisions shall be made with the goal of properly

20   identifying arrestees at the earliest possible point in the booking process with the best,

21   reasonably accessible technology.  VCSO shall continually maintain a policy in which

22   fingerprint identification be used as the primary source of identification to verify the

23   identity of arrestees who are booked on warrants unless and until another, more reliable,

24   means of identification becomes available.  VCSO shall maintain a mistaken identity

25   procedure approximately commensurate with the provisions set forth in Article 51.

26

27

28

                                                    20

F.      VCSO retains the ability, in its discretion, to make non-material

changes to Article 51 and other related procedures and forms associated with the mistaken

identity procedure articulated in Article 51, to meet the objective of promptly removing

from the system those people who have been misidentified.  For example, it is anticipated

that Article 51 will be revised to include a list of forms to be distributed to the

misidentified persons.

37.     Within 30 days of the full execution of the Settlement Agreement, the parties

shall mutually agree upon a monitor.  According to the following schedule, the monitor

shall review compliance with VCSO's new policies and procedures: 6 months and, then

again, 24 months after the "Effective Date."

A.      The monitor shall receive from VCSO a copy of all of the completed

forms associated with each "Incarceration Incident," including:

(1)     Claim of Wrong Subject/Wrong Identity Arrest Warrant,

(2)     Notice of Warrant Misidentification, and

(3)     A copy of the jail incident report or other official report from

VCSO which documents the investigation of the claim and the outcome of the

investigation.

B.      The monitor shall verify the progress of VCSO's compliance with the

provisions of paragraphs 36(A), 36(B), 36(C) 36(D), 36(E), and 36(F).

C.      The monitor shall be provided with a list of all files which any VCSO

employee decontaminated as described in paragraphs 36(A) and (B).  The monitor shall

also be provided the opportunity to review the documents described in paragraph

21

36(A)(4).

        D.     The mistaken identification claims forms shall be stored in a central location in the Jail Legal Unit.  The documents required to be retained will be:

              (1) Claim of Wrong Subject/Wrong Identity Arrest Warrant,

              (2) Notice of Warrant Misidentification, and

              (3) A copy of the jail incident report or other official report from the misidentification claim documenting the investigation and its outcome.

VCSO shall maintain hard-copies of these documents in the Jail Legal Unit.  The parties agree that since Article 51 directs sheriff's personnel to provide to misidentified persons the packet of forms appended to the Settlement Agreement, and since the Jail Incident Report will document their distribution, no additional documentation of distribution will be required for the monitor.

        38.     VCSO employee(s) who performed the data integrity verification procedures set forth in paragraphs 36(A) shall submit to interviews by the monitor and shall be prepared to describe:

        A.     The nature of the problem with the file that the VCSO employee worked on; and

        B.     The steps taken by the VCSO employee to fix the file.

        39.     During the interviews, the monitor need not review each file, but may, in his discretion, sample enough files to satisfy himself that VCSO is in compliance.  The Administrator, Class Counsel, and Defense Counsel reserve the right to be present during the interview process described herein.

22

40.     The parties agree that VCSO will cooperate with the monitor and comply with any reasonable requests for information that the monitor may make in order to fulfill his duties, including providing the monitor with access to the VCSO computer system, booking and classification files, and inmate jackets.

41.     In connection with both reviews at 6 and 24 months, within 60 days after being provided with the documents and completing the interview process, the monitor shall prepare a report which shall be served upon the Administrator, Class Counsel and Defense Counsel.  The Administrator, Class Counsel and Defense Counsel will have 30 days from the date of service of the monitor's report to object, suggest revisions to the report, and/or provide additional information to the monitor.

42.     If the monitor does not receive any objections or revisions within 30 days after serving the parties with his report, his report shall be deemed final.

43.     If objections, suggested revisions or additional information are given to the monitor by either the Administrator, Class Counsel or Defense Counsel, the monitor shall respond in writing.  The monitor shall then have 90 days to further evaluate compliance and to issue a final report to the parties.

44.     For 30 months following Final Approval of the Class Settlement, Class Counsel may move the court to enforce compliance with the agreed upon VCSO policies and procedures described in the Settlement Agreement and will be entitled to attorney's fees and costs in connection with a successful or partially successful motion to enforce the terms of the Settlement Agreement.  However, Class Counsel shall not seek, and the court shall not issue any injunctive, declaratory or equitable orders which materially exceed the

1    scope of the Settlement Agreement and Exhibits.

2        45.    Termination of Jurisdiction: For 30 months following Final Approval of the

3    Class Settlement, the Court will retain jurisdiction to enforce the specific provisions of the

4

5    Settlement Agreement and to hear and adjudicate any dispute or litigation arising from the

6    interpretation or application of the Settlement Agreement, unless the parties stipulate that

7    the Court's jurisdiction should terminate earlier.  The jurisdiction of the Court shall

8

9    terminate automatically 30 months after Final Approval of the Class Settlement unless

10   Class Counsel petitions the Court and proves by a preponderance of the evidence that there

11   is a need for continued jurisdiction to ensure full implementation of the injunctive relief

12

13   set forth in the Settlement Agreement.

14       46.    The parties agree that the changes to the procedures outlined in the

15   Settlement Agreement satisfy the Ninth Circuit requirements established in *Fairley v.*

16   *Luman,* 281 F.3d 913 (9th Cir. 2002), *Lee v. City of Los Angeles,* 250 F.3d 668 (9th Cir.

17   2001), and *Alvarado v. Bratton,* 299 F.Appx. 740, 2008 WL 4833267 (9th Cir.

18

19   2008)(unpublished).  The parties further agree that other features of the Settlement

20   Agreement, such as the Notice of Warrant Misidentification, Instructions for Obtaining

21   Judicial Clearance and Warrant Notification Form B provide enhanced protection to

22

23   misidentified individuals.  Plaintiffs, therefore, agree that it is proper to dismiss the

24   equitable, declaratory and injunctive causes of action with prejudice on a class wide basis.

25       47.    The parties have agreed that the monetary damages and attorneys' fees shall

26   be as follows:

27

28       A.    Plaintiff representative shall receive a one-time only lumpsum total

24

1  payment of $55,000.  This figure is comprised of four components as follows:

2      1. $ 3,000 in general (non-economic) damages for emotional distress.

3      2. $12,000 in reimbursement for attorney fees and costs incurred in litigating Penal

4  5  Code section 851.8 petitions for factual findings of innocence and judicial clearance orders

6  in Los Angeles and Santa Barbara Counties.

7      3. $20,000 for his past and future medical and psychiatric treatment.

8  9      4. $20,000 for his role as Plaintiff representative.

10  Mr. Velasquez will not receive any money from the class settlement fund.

11      B.      The class settlement fund shall be a total of $120,000 to be distributed

12  13  as follows: $3,000 payment for each "Incarceration Incident" on a claims-made basis with

14  a total settlement fund of $120,000.  If the Incarceration Incident claims exceed 40, the

15  total settlement fund shall be redistributed on a pro-rata basis per incident, not exceeding

16  17  $120,000.  If the incident claims are fewer than 40, the balance of the class settlement fund

18  will automatically revert to the County of Ventura.  The County will issue 1099 tax forms

19  as required.

20      C.      In addition, Defendants agree to pay attorneys' fees and costs to Class

21  22  Counsel of $175,000 subject to the approval of the Court.  This is a one-time and one-time

23  only lump sum payment.  Defendants have not been informed of the existence of any Class

24  Counsel other than counsel of record, The Law Offices of Brian A. Vogel, PC, 770 County

25  26  Square Drive, Suite 104, Ventura, California 93003.  The payment shall be drawn to the

27  sole order of Law Offices of Brian A. Vogel, PC, and shall fully extinguish all past,

28  present and future fees and costs liability of Defendants.  Defendants also shall pay all

25

1 costs associated with the Claims Administration process.

2     48.    Class Counsel will petition the Court for attorneys' fees and costs in that

3 amount.  Such petition will not seek fees on fees and will be heard at the final approval of

4

5 the class settlement hearing.  Defendants will not oppose such a petition.

6 **CLASS NOTIFICATION**

7     49.    The Administrator shall be responsible for providing Class Notice.  This

8

9 shall comprise mailing notice by regular mail to the last known address ICMs and PSCMs.

10 The Administrator shall use the last known address of the ICM or PSCM in his or her

11 booking record, unless Class Counsel provides an alternative address in writing within 10

12 calendar days of the completion of the SAD. The Class Notice shall describe the

13

14 particulars of the case, provide the class definition, provide information for claimants to

15 contact the Administrator for a claims form and other usual and customary information. A

16 Class Notice is attached to the Settlement Agreement as Exhibit I in English and Exhibit J

17 in Spanish.  Class Counsel shall be provided a claim form from which copies can be made,

18

19 to provide to persons seeking claim forms from him.

20     50.    The Administrator shall complete the mailing, as set forth in Paragraph 49,

21

22 within three consecutive business days.  The first day of such mailing is the first day of the

23 period for calculating the "bar date" as provided in ¶ 7.  The mailing for PSCMs will

24 consist of Exhibits I, J. N, P and O.

25     51.    The Administrator shall be responsible for publishing Class Notice as

26 follows:

27

28     A.    Defendants and Class Counsel will mutually agree upon one Spanish

26

and one English language television ("TV") station to broadcast class notice.  The choice of stations must be reasonably calculated to give notice to the ICMs and PSCMs.  Class Counsel will not unreasonably withhold consent.  The advertising shall run for 14 consecutive days including Saturdays and Sundays on one Spanish language and one English language TV station.  The parties agree that the TV advertising will be a moderately priced ad package which will be aired at least five times per day for the 14 day period.

        B.     Defendants and Class Counsel will mutually agree upon one Spanish and one English language radio station to broadcast class notice.  The choice of stations must be reasonably calculated to give notice to the ICMs and PSCMs.  Class Counsel will not unreasonably withhold consent.  Radio advertising on a radio station reaching Ventura County will run for approximately ten minutes daily.  The parties agree that the radio advertising will be a moderately priced ad package which will be aired at least five times per day for a 14 day period.  If a radio station's broadcasting tower originates outside of Ventura County, only a 50,000 watt clear channel station meets this requirement.  Exhibits K and L to the Settlement Agreement shall be the content of the advertisements in Spanish and English.

        C.     Ventura Reporter. The notice shall run for two consecutive weeks and shall be at least 1/8 page in size.  Exhibit M to the Settlement Agreement shall be the content of this ad.

        D.     A website.  A website shall be created to provide notice of, and further information regarding the lawsuit and settlement.  Defendants and Class Counsel

27

shall agree to the content of the website which shall include, at a minimum, a copy of the settlement agreement and all attachments.  No claims shall be presented via the website.

## CLASS ADMINISTRATION FOR PROOF OF CLAIM FORMS

52.     The Administrator shall be responsible for providing and receiving Proof of Claim Forms.  The Administrator shall determine eligibility for and the amount of payment based on the terms of the Settlement Agreement subject to the review of Class Counsel.

53.     A Proof of Claim Form shall be deemed timely submitted when received by the Administrator, or postmarked, on or before the Bar Date.  Facsimile or electronic mail filings are not acceptable, will be deemed untimely submissions and shall not be considered by the Administrator.

54.     A Proof of Claim Form which does not meet the requirements set forth in the Settlement Agreement or is otherwise determined to be deficient or untimely by the Administrator will be preliminarily rejected by the Administrator.

55.     If the Administrator rejects a claim, it shall provide written notice by First Class Mail to the Claimant and to Class Counsel.  The Claimant shall have 30 calendar days from the date of the rejection letter to submit additional information in support of his or her eligibility as an ICM.  Failure to timely respond to the Administrator's notice of rejection will bar any further rights for consideration of eligibility.

56.     If the Claimant timely provides additional information following the Administrator's notice of rejection, the Administrator shall reevaluate the claim.  If the Administrator reverses the rejection, the Claimant shall be deemed to be an ICM.  If the

Administrator rejects the claim again, it shall provide written notice by First Class Mail to the Claimant and to Class Counsel.  The Administrator shall also provide the additional information provided by the Claimant to Class Counsel.  If Class Counsel and the Administrator cannot agree, the matter shall be submitted to the Special Master pursuant to the Dispute Resolution procedures set forth in paragraph 68.

57.    The Administrator will prepare a list of all claims and their disposition within 30 days following expiration of the Bar Date and provide it to Class Counsel. Claimants who timely submit claims within 30 of the days of the bar date whose claims are rejected by the Administrator, shall not be barred from submitting additional information and availing themselves of the reevaluation process set forth in paragraphs 55 and 56.

58.    The Parties agree that Proof of Claim Forms which are not submitted before the "Bar Date" shall be shall be rejected by the Administrator and no payment shall be made.

59.    The Administrator shall not make payment to any ICM until all claims have been verified by the Administrator pursuant to the terms of the Settlement Agreement.

60.    **Timing of payments**

A.    Payments under the Settlement Agreement to the Plaintiff representative, to ICMs as to whom there is no dispute, and to Class Counsel shall be made within 45 days of the "Effective Date."

B.    If a timely appeal is filed, payment shall be made 30 days after the exhaustion of all appeals and petitions for writs of certiorari and issuance of mandate.

C.    Payments under the Settlement Agreement to ICMs as to whom there

29

is a dispute, shall be made within 30 calendar days of the resolution of the dispute.

61.     Payment to the Plaintiff representative shall be by negotiable instrument payable to the order of Charles Robert Velasquez.  Such instrument shall be disbursed exclusively to Class Counsel without notification to Plaintiff representative.  Class Counsel will notify Plaintiff representative within five days of receiving payment on his behalf.  Class Counsel shall be paid by check drawn payable to the order of the Law Offices of Brian A. Vogel, PC.  The ICMs shall be paid directly via check sent First Class mail to the address contained on their Claim Form.

## GARNISHMENT OF PAYMENT FOR LIENS

62.     The Administrator shall deduct from any claim payment amounts owed by a claim participant for any liens or court orders for restitution, child support, debts to county agencies and statutory liens.  The Administrator will make payment to the County or any of its agencies, the proper payee and/or their designee for those payment amounts deducted as set forth in this paragraph. The defendants shall prepare a list of the liens or orders applicable to each class member (hereafter referred to collectively as "lien" or "liens"), and the parties shall meet and confer only with respect to lien garnishment disputes after the Administrator has investigated the propriety of the dispute.  The following procedures shall apply.

A.     For those ICMs who owe an amount as described above, a letter will be sent which must include the following: (1) The amount that the ICM will receive upon distribution of the settlement funds, (2) notice of the amount owed on liens, (3) the nature of the lien, (4) the claimant's right to request a waiver of the lien upon submission to the

30

1   Administrator of written proof that the lien had been previously paid, and (5) notice of the

2   right to contest the lien exclusively in a binding procedure through the Special Master and

3

4   advise him or her of the procedures to do so (the full extent of which will be elaborated in

5   a final Settlement Agreement and/or Settlement Approval Order).

6           B.      The Special Master agreed to pursuant to ¶ 68 will be empowered to

7
    resolve any lien disputes under this paragraph.  To participate as a class member, any
8
9   claimant with liens will be deemed to have agreed that the Special Master's determination

10  shall be binding and non-appealable.  Such a claimant may present his or her contentions

11
    and supporting documents in writing to the Special Master.  Each side's counsel will make
12
13  a recommendation to the Special Master, who will then decide.

14          C.      Despite the amount of any lien, no claimant shall have to pay more

15  than 50% of his/her class fund payment towards the lien, which ensures that the claimant

16
    will receive funds for his/her claim regardless of the amount of any lien.
17
18  **EXCLUSION FROM SETTLEMENT CLASS—OPT OUTS AND OBJECTORS**

19          63.     Any ICM who wishes to be excluded from the Settlement Class must submit

20  a request to be excluded from the class, defined herein as "Opt-Out". The request for

21
    exclusion must be delivered to the Administrator, or postmarked, on or before the Bar
22
23  Date.  The Administrator shall include an "Opt-Out Form"in the Class Notice Mailing

24  substantially similar to Exhibit P attached hereto.  Any ICM who wishes to object to the

25
    Settlement Agreement or the attorneys' fees request must give the reason why he or she
26
27  thinks the Court should not approve either or both via a written statement with the case

28  name and number at the top of the page. In addition, they must provide their name, address

                                              31

(just giving the address of an attorney who represents them is not sufficient), telephone number, the dates of incarceration to the extent known, their signature and the reason for the objection. If they are represented by a lawyer, they should also give the name, address and telephone number of that lawyer. They must mail their objections and any supporting papers by First-Class mail, postmarked no later than the Bar Date, to the Court and counsel for the plaintiff Representative.

64.     Any ICM who chooses to Opt-Out from or object to the Settlement Agreement shall be deemed to have submitted to the jurisdiction of the Court with respect to his/her claim and to any dispute resolution process conducted by a Special Master as set forth in the Settlement Agreement.

65.     Any ICM who does not Opt-Out as set forth in the Settlement Agreement, shall be deemed conclusively to have become an ICM and to be bound by the Settlement Agreement and all subsequent proceedings, orders and judgments herein.

66.     Any ICM who exercises an Opt-Out, as set forth in Paragraph 63, shall not share in any monetary benefits provided by the Settlement Agreement.

67.     The Administrator will report to Defendant's counsel and Class Counsel all Opt-Outs upon receipt, and will determine and report to counsel the total number of Opt-Outs no later than 10 days after the Bar Date. If the total number of Opt-Outs exceeds 12, Defendants, in their sole discretion, may rescind their acceptance of the Settlement Agreement. Defendants, in exercising this right of rescission, shall provide the Administrator and Class Counsel with written notice of rescission within 20 days after receipt of the Administrator's report providing the total number of Opt-Outs. In the event

32

1   Defendants exercise their right of rescission in accordance with this paragraph, any funds

2   paid or deposited pursuant to the Settlement Agreement shall be returned to Defendants

3

4   within 10 days of the exercise of the right to rescind, less any expenses, fees and costs

5   incurred by the Administrator.

6                           **DISPUTE RESOLUTION**

7       68.      The Parties agree to the appointment of Louise LaMothe as Special Master

8   pursuant to Federal Rules of Civil Procedure Rule 53 to resolve disputes which arise from

9

10  implementation of the Settlement Agreement.  If Ms. LaMothe is unwilling or unable to

11  serve, the parties shall select a new Special Master.  If the parties are unable to agree, the

12

13  Court shall do so upon motion.  Defendants shall pay the fees and expenses of the Special

14  Master, but not Class Counsel's fees in connection therewith.

15          A.      The parties shall submit briefs to the Special Master within 10 days of

16  a dispute.

17

18          B.      The Special Master may request additional briefing or evidence at her

19  discretion.

20          C.      The Special Master shall issue a ruling resolving the dispute within

21

22  10 days after submission of the matter in dispute.

23                              **INTEGRATION**

24      69.      The Settlement Agreement supersedes all prior communications regarding

25  the matters contained herein between the signatories hereto or their representatives.  The

26

27  Settlement Agreement is an integrated agreement and contains the entire agreement

28  regarding the matters herein between the signatories hereto and no representations,

33

warranties or promises have been made or relied on by any party hereto other than as set forth herein.  No parol evidence shall be admissible in any challenge to the Settlement Agreement.  The Settlement Agreement was drafted by counsel for the parties hereto, and there shall be no presumption or construction against any party, each such party expressly waiving reliance on the doctrine of *contra proferentem*.

### NON-SEVERABILITY

70.     The provision of the Settlement Agreement are integrated.  The invalidation of a material provision of the Settlement Agreement invalidates the whole thereof.

### FAIRNESS HEARING AND FINAL ORDER OF APPROVAL

71.     Before the Settlement Agreement becomes final and binding on the parties, the Court shall hold a Fairness Hearing to determine whether to enter the Final Order of Approval.

### NO ADMISSION OR WAIVER

72.     The Parties acknowledge and agree that all undertakings and agreements contained in the Settlement Agreement have been agreed to solely for the purpose of finally compromising and resolving all questions, disputes and issues between them relating to the litigation. The Settlement Agreement and any proceedings taken pursuant hereto shall not in any event be construed as, interpreted as, or deemed to be evidence of an admission or concession by either party for any purpose, or deemed to constitute a waiver of any legal position or any defenses or other rights which either of the parties might otherwise assert in any context. Neither the Settlement Agreement nor any of its provisions nor any other documents related hereto nor any negotiations, statements or

34

1   testimony taken in connection herewith may be offered or received in evidence in, or used

2   for any other purpose, or in any suit, action or legal proceeding which either of them may

3

4   now have or in the future have with any other person, as an admission or concession of

5   liability or wrongdoing or as any admission or concession on the part of either party,

6   except in connection with any action or legal proceeding to enforce the Settlement

7   Agreement. The Parties have reached the Settlement Agreement on a commercial basis

8

9   through arms-length negotiations and to avoid the costs and delays of further disputes,

10  litigation and negotiations among them.  The Settlement Agreement has been entered into

11  without any concession of liability or non-liability whatsoever and has no precedential or

12  evidentiary value whatsoever.  The Settlement Agreement does not and is not intended to

13  create any rights with respect to any third parties.

14

15

16  Dated: September 20, 2011

17

18

19  By: _____

20  CHARLES ROBERT VELASQUEZ, on his own
    behalf, and as Plaintiff Representative

21

22  Dated: September 20, 2011        LAW OFFICES OF BRIAN A. VOGEL, PC

23

24  By: _____

25  BRIAN A. VOGEL
    Class Counsel

26

27  ///

28  ///

35

1    Dated: September _20_, 2011        LAW OFFICES OF ALAN E. WISOTSKY

2

3

4                                      By: _____
                                       ALAN E. WISOTSKY
5                                      Attorneys for Defendants County of Ventura, et al.

6

7    Dated: September _20_, 2011        LAW OFFICES OF ALAN E. WISOTSKY

8

9

10                                     By: _____
                                       JEFFREY HELD
11                                     Attorneys for Defendants County of Ventura, et al.

12

13

14   Dated: September _17_, 2011        VENTURA COUNTY SHERIFF'S OFFICE

15

16                                     By: _____
17                                     GARY PENTIS
                                       Assistant Sheriff, Ventura County Sheriff's Office
18

19   Dated: September _19_, 2011        COUNTY OF VENTURA

20

21                                     By: _____
22                                     CHARLES S. PODE
                                       Deputy Executive Officer, Risk Manager
23

24

25

26

27

28

                                       36

**TABLE OF EXHIBITS**

Exhibit A:   VCSO, Detention Services, Divisional Policy, Article 51, revised August 5, 2011, ("Article 51").

Exhibit B:   Warrant Notification Form A

Exhibit C:   Warrant Notification Form B

Exhibit D:   Notice of Warrant Misidentification template to be printed on VCSO official letterhead.

Exhibit E:   VCSO, Detention Services, Form entitled "Instructions To Obtain Judicial Clearance In Ventura County" and Penal Code Section 851.8 Form.

Exhibit F:   VCSO, Detention Services, "Claim of Wrong Subject/Wrong Identity Arrest Warrant" Form.

Exhibit G:   VCSO, Pre-Trial Detention Facility Policy and Procedures Section 4, Chapter 2, Subsection D, entitled "Booking Identification Procedure".

Exhibit H:   INTENTIONALLY LEFT BLANK

Exhibit I:   The Class Notice Form

Exhibit J:   The Class Notice Form in Spanish

Exhibit K:   Content of Radio and TV ad in English

Exhibit L:   Content of Radio and TV ad in Spanish

Exhibit M:   Content of Newspaper Ad in English

Exhibit N:   Proof of Claim and Release Form in Spanish and English

Exhibit O:   Potential Settlement Class Member Letter in Spanish and English

Exhibit P:   Opt-Out Form

# EXHIBIT A

# Ventura County Sheriff's Office
## Detention Services
## Divisional Policy



Article 51
### *Booking Identification Process for Warrant Arrests*
### *and*
### *Claims of Mistaken Identity*

Drafted: August 5, 2011          Reviewed:                    Revised:

## PURPOSE

To define the Detention Services Division policy for proper identification of persons arrested on a warrant and booked into a Ventura County Sheriff's Office jail facility.

To provide a procedure for claims of mistaken identity of persons arrested on a warrant and booked at a Ventura County Sheriff's Office jail facility.

## POLICY

It is the policy of the Detention Services Division to verify the identity of a person arrested and booked at a jail facility. This policy addresses an expedited process for comparative identification for persons arrested on warrants. This policy also addresses the procedure for handling an arrestee's claim of mistaken identity.

## DEFINITIONS

**Warrant:** A written order issued by authority of the state and commanding the seizure of the person named.

**Arrestee:** A person who is under arrest. For the purposes of this Divisional Policy it will be the person who was arrested on the warrant.

**Live Scan:** California's Live Scan system takes digital images of fingerprints and allows for the Department of Justice to maintain a centralized criminal records database that can be searched for the purpose of identification.

## PROCEDURES

## BOOKING PROCESS

All persons booked into the Ventura County jail shall be enrolled into VCIJIS using the Single Print Index (SPI) biometric device. If an arrestee has not been previously booked, the jail Watch Commander shall have override authority in order to create a new record.

All persons booked at the East Valley Jail shall be enrolled into VCIJIS in the same manner. The deputy assigned to the East Valley Jail shall call the Pre-Trial Detention Facility Watch Commander to obtain approval to override VCIJIS to create a new record. The East Valley Jail booking deputy will continue the booking process outlined below.

Once the booking has been accepted, the arrestee will be brought to the booking floor for the reception booking processing to occur. All arrestees shall be Live Scanned and photographed following Reception Booking and prior to being placed into the phone cell.

## CLASSIFICATION

### Arrestee Identification

Upon receipt of the inmate's jacket, the Classification Deputy shall do the following:

- Attempt to preliminarily identify the arrestee using all available databases, including but not limited to VCIJIS, CII and FBI.

- Confirm the arrestee's identification and VCIJIS information by directly comparing the identifying information (including CII and FBI numbers) contained in the State DOJ Live Scan return against the identifying information in the actual warrant or warrant abstract and against the information contained in VCIJIS.

- In the event a conflict arises between the information contained in the Live Scan return versus information contained in VCIJIS, Live Scan information will always prevail.

- Retain an electronic copy of the Live Scan return image in the inmate's Restricted Information (RI) section on VCIJIS.

- Once the inmate's identity has been verified, the Classification Deputy is to proceed with the normal classification process.

- Facilitate contact between the Classification Unit and Sheriff's Records to correct inaccuracies in VCIJIS discovered during the classification/identification process.

### False Information Provided by Inmate

If the Classification Deputy determines an arrestee has provided false information regarding his identity, appropriate measures will be taken to ensure the inmate is booked under his true name and identifying information.

### Wrong Warrant Subject

If the Classification Deputy believes an arrestee has been booked for a warrant intended for another individual, he will notify the Level One Senior Deputy. The Level One Senior Deputy will review the findings and, if appropriate, authorize the release of the inmate on that warrant per PC 849 (b)(1). The following will then occur:

- The Classification Deputy will complete the PC 849 form for that warrant arrest and give the completed form along with the arrestee's jacket to CIR personnel for processing the release of the arrestee on that warrant.

- CIR will release the arrestee on that warrant and use "ID Clearance" as the computer release code. Additionally, if the subject was arrested on an out-of-county warrant, CIR personnel shall complete the teletype request form entitled "Warrant Release Notification" (Form B) and check the box that denotes the wrong subject was arrested for the warrant.

- The Level One Senior Deputy will provide the inmate with the following documents prior to release;

  1. "Notice of Warrant Misidentification" (On Dept Letterhead)

  2. Copy of the PC 849(b)(1) release form.

  3. Instructions for Obtaining Judicial Clearance

  4. PC 851.8 Petition

- If the subject was arrested on a local warrant, the Level 1 Senior Deputy shall notify Sheriff's Records that the arrestee was not the subject of the warrant and  request to have that information noted on the warrant's jacket and placed into the due diligence notes.

- The Level One Senior Deputy will notify the Jail Watch Commander and the Watch Commander will make a Redbook entry regarding the incident.

- The Classification Deputy will document the findings on a JIR and official Sheriff's Department report forms (i.e. Incident Report). The report shall include all pertinent information regarding the investigation and shall include the name of the Level One Senior Deputy who approved the release and that they provided the inmate the four documents noted above.

- The Level One Senior Deputy shall ensure copies of all written reports and completed forms are given to the Jail Legal for retention.

## INMATE CLAIMS OF WRONG SUBJECT OR WRONG IDENTITY

If an inmate claims to any staff member at any time during his incarceration that he is not the subject of the arrest warrant for which he is in custody, that staff member shall immediately provide a "Claim of Wrong Subject/Wrong Identity of Arrest Warrant" form to the inmate.  Once the inmate completes the claim form, it will be immediately forwarded to the Level I Senior Deputy.  The Level 1 Senior Deputy is responsible for initiating an immediate investigation into the claim.

If an arrestee claims at any time during the <u>booking process after being reception booked</u> that he is not the subject of the warrant for which he has been arrested, the

arrestee will immediately be Live Scanned and photographed, if that process has not already occurred. The arrestee will be given a "Claim of Wrong Subject/Wrong Identity of Arrest Warrant" form and will be placed into a booking cell to complete the form. The Level 1 Senior Deputy will be immediately notified of the arrestee's claim.  The Level I Senior Deputy will obtain the claim form as quickly as practical and will immediately begin an investigation. Following completion of the form, the arrestee will continue with normal booking procedures pending the outcome of the investigation.

In all circumstances in which an inmate completes a Claim of Wrong Subject / Wrong Identity of Arrest Warrant form, the Level 1 Senior Deputy shall do the following:

- Notify the Watch Commander of the pending investigation.

- Notify the Classification Deputy of the inmate's claim.

- Ensure the Classification Deputy gives priority to verifying the claim of the inmate by comparing the State DOJ Live Scan return information, such as the CII Number or FBI Number, with the corresponding information contained in the warrant abstract or warrant.

- If there are no CII Numbers or FBI Numbers to use as comparison, contact the issuing agency for more identifying information, which may include a booking photograph, additional identifiers, or a crime report.

Write a Jail Incident Report and, if claim is valid, an official Sheriff's Department report (i.e. Incident Report) outlining the inmate's claim, the methods used to investigate the claim, and the disposition of the investigation.  The reports must be approved by the Watch Commander.

### Additional Procedures for a Valid Claim

If the arrestee claiming to be the wrong subject of the arrest warrant is found to be correct in his assertion, the following will occur:

- The Level One Senior Deputy will complete a PC 849 form and give the form to CIR personnel.

- CIR personnel will release the inmate on that warrant and shall use the release code "Claim Form".  Additionally, if the subject was arrested on an out-of-county warrant, CIR personnel shall complete the teletype request form entitled "Warrant Release Notification" (Form B) and check the box that denotes the wrong subject was arrested for the warrant.

- The Level One Senior Deputy will provide the inmate with the following documents prior to release;

    1. "Notice of Warrant Misidentification" (On Dept Letterhead)

    2. Copy of the PC 849 release form.

3. Instructions for Obtaining Judicial Clearance.

4. PC 851.8 Petition

- The Level 1 Senior Deputy shall notify Sheriff's Records when the arrest involves a local warrant and the arrestee was not the correct subject. The Senior Deputy shall request to have that information noted on the warrant's jacket and placed into the due diligence notes.

**Additional Procedures for All Claims**

The following shall occur for all claims, whether validated or invalidated;

- The approved reports will be forwarded to the Classification Unit. The Classification Unit will enter a brief synopsis of the claim and the disposition of the investigation into the inmate's Restricted Information (RI) screen.

- The Level One Senior Deputy will ensure that the original Claim of Wrong Subject / Wrong Identity of Arrest Warrant form, copy of the PC 849 form if applicable, and copies of all written reports will be forwarded to the Detention Services Legal Unit for retention.

- The Watch Commander shall make a "Red Book" entry of the investigation and the disposition.

**CENTRAL INMATE RECORDS**

**Wrong Subject / Wrong Identity Warrant Arrest**

Staff Initiated

Whenever jail personnel discover that a subject has been arrested in error on another person's warrant, the subject shall be released as soon as possible.  CIR shall use the release code "ID Clearance". This release code shall only be used in those circumstances in when jail personnel discover the error. Additionally, if the subject was arrested on an out-of-county warrant, CIR personnel shall complete the teletype request form entitled "Warrant Release Notification" (Form B) and check the box that denotes the wrong subject was arrested for the warrant.

Inmate Initiated (Claim Form)

When a Claim of Wrong Subject / Wrong Identity of Arrest Warrant claim form is completed by an inmate and validated, the inmate shall be released as soon as possible.  CIR shall use the release code "Claim Form".  This release code shall only be used in those circumstances in which an inmate has completed a Claim of Wrong Subject / Wrong Identity of Arrest Warrant claim form and was

released on the warrant as a result.  Additionally, if the subject was
arrested on an out-of-county warrant, CIR personnel shall complete
the teletype request form entitled "Warrant Release Notification"
(Form B) and check the box that denotes the wrong subject was
arrested for the warrant.

### Routine Pre-Release Warrant Checks

Whenever the custody intake release specialist conducts a pre-release
records check for warrants, each inquiry shall include the CII number of
the individual being cleared, in addition to the name and date of birth.

## SUPPLEMENTAL WARRANT ARRESTS WHILE IN CUSTODY

Whenever an arrest warrant is served upon an inmate that is already in custody, the
inmate shall be Live Scanned and CII numbers in the warrant or warrant abstract will be
compared to the Live Scan return.  This shall be an additional Live Scan conducted at
the time of the warrant arrest.  The Live Scan conducted at the time of booking shall not
be used in place of the warrant arrest Live Scan.

# EXHIBIT B

**VENTURA COUNTY SHERIFF'S OFFICE**
**WARRANT BOOKING NOTIFICATION** (FORM A)

DATE:_____

TIME:_____

__X__ DIRECT TELETYPE

_____
(NAME OF PD OR SO DEPARTMENT)
ATTN: WARRANT DETAIL/TRANSPORTATION          BOOKING NO._____

_____          DOB_____          CII / FBI NO._____
(NAME)

AKA_____          WARRANT BOOKING DATE _____

WARRANT #._____          OUT OF_____
                                                                          (NAME OF COURT)

____  POSTED BAIL TO APPEAR _____          _____
                                          (NAME OF COURT)                    (DATE AND TIME)

____  UNABLE TO POST BAIL, AVAILABLE FOR IMMEDIATE PICK UP, LAST DAY FOR PICK UP IS _____
      PLEASE GIVE 12 HOURS ADVANCE NOTICE

____  LOCAL CHARGES PENDING - WILL ADVISE

____  PLEASE ACKNOWLEDGE RECEIPT OF THIS MESSAGE BY RETURN TELETYPE

____  PLEASE COORDINATE PICK UP WITH _____ THEIR WARRANT NO. _____

Phone#: (805) 654-3300                              Requested by: _____

DISTRIBUTION:    White - Teletype    **Canary** - pending File    Department: **Central Inmate Records   SIRT**

SO-243a (7/11)

# EXHIBIT C

**VENTURA COUNTY SHERIFF'S OFFICE**
**WARRANT RELEASE NOTIFICATION (FORM B)**

DATE:_____

TIME:_____

_X_ DIRECT TELETYPE

_____
        (NAME OF PD OR SO DEPARTMENT)

**ATTN: WARRANT DETAIL/TRANSPORTATION**          BOOKING NO._____

_____  DOB_____     CII / FBI NO._____
       (NAME)

AKA_____          WARRANT BOOKING DATE _____

WARRANT #._____          OUT OF_____
                                              (NAME OF COURT)

____   PER YOUR TELETYPE REQUEST
       THE ABOVE INMATE WAS CITED & RELEASED TO APPEAR _____
                                                          (DATE AND TIME)
____   WE HAVE DETERMINED THAT THE INMATE NAMED ABOVE, IN OUR CUSTODY, IS NOT THE SAME
       SUBJECT WANTED BY YOUR AGENCY. PLEASE UPDATE YOUR RECORDS ACCORDINGLY.
____   YOUR 5 DAYS FOR PICK UP HAVE EXPIRED.  THIS INMATE HAS BEEN RELEASED STATUE OF LIMITATIONS.
       PLEASE REACTIVATE YOUR WARRANT / WARRANTS.

Requested by:_____                Department: **Central Inmate Records**
                                                        **SIRT**
Phone#: (805) 654-3300

SO-243b (8/11)

# EXHIBIT D



# VENTURA COUNTY
# SHERIFF'S DEPARTMENT

- **GEOFF DEAN**
  Sheriff
- **GARY PENTIS**
  Assistant Sheriff
- **JOHN CROMBACH**
  Assistant Sheriff

800 SOUTH VICTORIA AVENUE, VENTURA, CA 93009   PHONE (805) 654-2380   FAX (805) 645-1391

## Notice of Warrant Misidentification

Date:

Dear _____,

On _____, you were booked for an arrest warrant at one of the Sheriff's custody facilities. The warrant was issued by: _____, with warrant number: _____ and a primary charge of:_____. It is the Ventura County Sheriff's Office's conclusion that **YOU ARE NOT THE SUBJECT OF THE WARRANT**. This determination was based on:

☐   CII# comparison (Subj. CII# _____vs. Wrnt. CII#_____)

☐   FBI# comparison (Subj.FBI# _____vs. Wrnt. FBI#_____)

☐   Photograph(s)

☐   Scars, Marks or Tattoos

☐   Consultation with Issuing Agency

☐   Other *(specify):* _____

Signature: _____   Rank: _____

Printed Name: _____

Telephone #: _____

Original – to person arrested      Copy – to inmate file      Copy – to Legal Unit

☐ SPECIAL SERVICES
  6401 Telephone Road, Suite 200
  Ventura, CA 93003
  (805) 477-7011 FAX (805) 477-7010

☐ PATROL SERVICES
  2101 East Olsen Road
  Thousand Oaks, CA 91362
  (805) 494-8261 FAX (805) 494-8295

☐ DETENTION SERVICES
  800 South Victoria Avenue
  Ventura, CA 93009
  (805) 654-2305 FAX (805) 654-3500

☐ SUPPORT SERVICES
  800 South Victoria Avenue
  Ventura, CA 93009
  (805) 654-3926 FAX (805) 654-2109

# Claim of Wrong Subject/Wrong Identity

# of Arrest Warrant

I am making an official claim that I am not the person who is wanted on the warrant for which I was arrested.  I understand that by making this claim, I will be subject to arrest for a misdemeanor crime of PC 148 (obstruction of justice) and/or PC148.9 (false information to a peace officer) if it is determined that I am making this claim to avoid prosecution or delay a peace officer in the course of his duty.

I declare, under penalty of perjury in the state of California, that I am not the person wanted under the warrant for which I am arrested today.  Signed on this day of: _____.

## Personal information:

Full Name:_____

Date of Birth:_____

Current Home Address: _____

_____

Driver's License Number: _____State: _____

Social Security Number:_____

_____          _____
Print Full Name                                              Signature

---

*For Official Use*

Warrant Number: _____

CII number on warrant: _____

Full name listed on warrant: _____

Date: _____          Time: _____

_____          _____
Deputy Name and ID (printed)                 Deputy Signature

Supervisor Signature and ID: _____

# Petición Para Sellar Y Destruir Los Registros
# De Adultos De Detención

Estoy haciendo una afirmación oficial de que no soy la persona que es buscado por la orden de que me detuvieron. Entiendo que al hacer esta afirmación, voy a ser sometido a detención por un delito menor de la PC 148 (obstrucción de la justicia) y / o PC148.9 (información falsa a un agente del orden público) si se determina que estoy haciendo este reclamo para evitar la persecución o retrasar un oficial de paz en el ejercicio de sus funciones.

Yo declaro, bajo pena de perjurio en el estado de California, que no soy la persona buscada en la orden de que me arresten hoy.  Firmado en este día de: _____.

**Información Personal:**

Nombre Completo:
_____

Fecha de Nacimiento:_____

Dirección Actual: _____

_____

Numero de Licencia de Conducir: _____Estado: _____

Numero de Seguro Social:_____

_____        _____
Impresión del Nombre                                 Firma

_____

*Para Uso Oficial*

Warrant Number: _____

CII number on warrant: _____

Full name listed on warrant: _____

Date: _____        Time: _____

_____        _____
Deputy Name and ID (printed)                Deputy Signature

Supervisor Signature and ID: _____

# Instructions for Obtaining Judicial Clearance

# And

# Sealing Arrest Records

Although you have been released from our custody on this warrant, you may still be subject to being detained and/or arrested on this warrant. Therefore, it is your responsibility to seek a formal judicial clearance regarding this warrant and to petition to have the arrest sealed/destroyed.

### To Obtain Judicial Clearance

To seek formal judicial clearance for the warrant of your arrest please go to Room 118 of the Hall of Justice/Ventura County Superior Court which is located at 800 South Victoria Avenue, Ventura, California 93009. Place yourself on calendar with the appropriate courtroom (11-misdemeanor or 12-felony). When you go to court please bring identification and any documents given to you by the Sheriff's Department regarding this warrant arrest. You will need to have your identity verified and this may include fingerprinting. After being identified as NOT being the warrant subject, the court may decide to issue you a business sized card with the court's seal explaining that you are not the subject of the warrant. The card is only valid for a single case.

### Petition to Seal / Destroy Arrest Records

To begin this process, please fill out the top of the attached "Petition to Seal and Destroy Adult Arrest Records" form as per California Penal Code Section 851.8 and present it to the law enforcement agency/court with jurisdiction for the offenses.

For Ventura County arrest warrants you will take the form and present it to Ventura County Sheriff's Records located at 800 South Victoria Avenue, Ventura, California 93009. You will need to bring photo identification and a copy of your "Notification of Warrant Misidentification" with you. A records clerk will assist you and you will receive further direction as necessary.

# Instrucciones para obtener la autorización judicial
## y
## Sellado de los registros de detención

A pesar de que ha sido liberado de nuestra custodia en esta orden, usted todavía puede estar sujeto a ser detenido y / o arrestado en esta orden judicial. Por lo tanto, es su responsabilidad de buscar una aprobación oficial judicial en relación con esta orden y petición para que el arresto sea sellada / destruida.

### Para Obtener La Autorización Judicial

Para solicitar la autorización judicial formal de la orden de arresto en su contra por favor vaya a la Sala 118 del Palacio de Justicia / Corte Superior del Condado de Ventura, (Room 118 of the Hall of Justice/Ventura County Superior Court) que está situada en el 800 S. Victoria Avenue, Ventura, California 93009. Solicite una cita en el calendario de la sala del tribunal correspondiente (11-delito menor o felonía-12). Cuando vaya a la corte que por favor traiga identificación y cualquier otro documento que le ha asignado el Departamento del Alguacil con respecto a este orden de detención. Usted tendrá que tener su identidad verificada y esto puede incluir la toma de huellas digitales. Después de ser identificado por NO ser el sujeto de la orden judicial, el tribunal podrá decidir que se emita una tarjeta de visita (tarjeta pequeña) con el sello del tribunal, explicando que no son el objeto de la orden. La tarjeta sólo es válida para un solo caso.

### Petición Para Que Se Selle / Destruir Los Registros De Detención

Para iniciar este proceso, por favor llene la parte superior de la hoja adjunta "Petición para sellar y destruir los registros de adultos de detención" forma según el artículo 851.8 del Código Penal de California y lo presente a la agencia policial / judicial con jurisdicción en los delitos.

Las órdenes de detención para el Condado de Ventura deben llevar la forma y presentarlo al Alguacil del Condado de Ventura Departamento de Archivos (Sheriff's Records) ubicada en 800 Avenue S. Victoria, Ventura, California 93009. Usted tendrá que traer una identificación con foto y una copia de su "Notificación de Errores en la identificación de Autorización Judicial" ("Notification of Warrant Misidentification") con usted. Un empleado de registros le atenderá y recibirá nuevas instrucciones cuando sea necesario.

# EXHIBIT E

# Instructions for Obtaining Judicial Clearance

## And

## Sealing Arrest Records

Although you have been released from our custody on this warrant, you may still be subject to being detained and/or arrested on this warrant. Therefore, it is your responsibility to seek a formal judicial clearance regarding this warrant and to petition to have the arrest sealed/destroyed.

### To Obtain Judicial Clearance

To seek formal judicial clearance for the warrant of your arrest please go to Room 118 of the Hall of Justice/Ventura County Superior Court which is located at 800 South Victoria Avenue, Ventura, California 93009. Place yourself on calendar with the appropriate courtroom (11-misdemeanor or 12-felony). When you go to court please bring identification and any documents given to you by the Sheriff's Department regarding this warrant arrest. You will need to have your identity verified and this may include fingerprinting. After being identified as NOT being the warrant subject, the court may decide to issue you a business sized card with the court's seal explaining that you are not the subject of the warrant. The card is only valid for a single case.

### Petition to Seal / Destroy Arrest Records

To begin this process, please fill out the top of the attached "Petition to Seal and Destroy Adult Arrest Records" form as per California Penal Code Section 851.8 and present it to the law enforcement agency/court with jurisdiction for the offenses.

For Ventura County arrest warrants you will take the form and present it to Ventura County Sheriff's Records located at 800 South Victoria Avenue, Ventura, California 93009. You will need to bring photo identification and a copy of your "Notification of Warrant Misidentification" with you. A records clerk will assist you and you will receive further direction as necessary.

# Instrucciones para obtener la autorización judicial
## y
## Sellado de los registros de detención

A pesar de que ha sido liberado de nuestra custodia en esta orden, usted todavía puede estar sujeto a ser detenido y / o arrestado en esta orden judicial. Por lo tanto, es su responsabilidad de buscar una aprobación oficial judicial en relación con esta orden y petición para que el arresto sea sellada / destruida.

### Para Obtener La Autorización Judicial

Para solicitar la autorización judicial formal de la orden de arresto en su contra por favor vaya a la Sala 118 del Palacio de Justicia / Corte Superior del Condado de Ventura, (Room 118 of the Hall of Justice/Ventura County Superior Court) que está situada en el 800 S. Victoria Avenue, Ventura, California 93009. Solicite una cita en el calendario de la sala del tribunal correspondiente (11-delito menor o felonía-12). Cuando vaya a la corte que por favor traiga identificación y cualquier otro documento que le ha asignado el Departamento del Alguacil con respecto a este orden de detención. Usted tendrá que tener su identidad verificada y esto puede incluir la toma de huellas digitales. Después de ser identificado por NO ser el sujeto de la orden judicial, el tribunal podrá decidir que se emita una tarjeta de visita (tarjeta pequeña) con el sello del tribunal, explicando que no son el objeto de la orden. La tarjeta sólo es válida para un solo caso.

### Petición Para Que Se Selle / Destruir Los Registros De Detención

Para iniciar este proceso, por favor llene la parte superior de la hoja adjunta "Petición para sellar y destruir los registros de adultos de detención" forma según el artículo 851.8 del Código Penal de California y lo presente a la agencia policial / judicial con jurisdicción en los delitos.

Las órdenes de detención para el Condado de Ventura deben llevar la forma y presentarlo al Alguacil del Condado de Ventura Departamento de Archivos (Sheriff's Records) ubicada en 800 Avenue S. Victoria, Ventura, California 93009. Usted tendrá que traer una identificación con foto y una copia de su "Notificación de Errores en la identificación de Autorización Judicial" ("Notification of Warrant Misidentification") con usted. Un empleado de registros le atenderá y recibirá nuevas instrucciones cuando sea necesario.

State of California
Record Management/Record Sealing Unit
FORM BCII 8270 (Rev. 7/06)

Department of Justice

Record Sealing Unit
P.O. Box 903417, Sacramento, CA  94203-4170

## PETITION TO SEAL AND DESTROY ADULT ARREST RECORDS (Penal Code 851.8)

*Print or Type required information*

| FULL NAME OF PETITIONER   Last | First | Middle |
|---|---|---|

| ALIASES | Date of Birth | DRIVER LICENSE NUMBER | SOCIAL SECURITY (OPTIONAL) |
|---|---|---|---|

| STREET NUMBER | STREET NAME | APARTMENT OR UNIT NUMBER |
|---|---|---|

| CITY | COUNTY | STATE | ZIP CODE |
|---|---|---|---|

| DATE(s) OF ARREST | NAME OF ARRESTING AGENCY | AGENCY CASE NUMBER | CHARGE(S) | DISPOSITION |
|---|---|---|---|---|

SIGNATURE OF PETITIONER                                 DATE

### *SECTION TO BE COMPLETED BY LAW ENFORCEMENT AGENCY/COURT WITH JURISDICTION FOR OFFENSE(S)*

I have verified the above information to be accurate.

SIGNATURE OF AGENCY OR COURT OFFICER                DATE

| NAME OF LAW ENFORCEMENT AGENCY OR COURT | LAW ENFORCEMENT AGENCY CASE NUMBER  OF COURT  CASE  NUMBER |
|---|---|
| CII NUMBER OF PETITIONER | FBI NUMBER OF PETITIONER |

### *SECTION TO BE COMPLETED BY LAW ENFORCEMENT AGENCY (851.8(a) PC)*

☐ PETITION GRANTED          ☐ PETITION DENIED

PRINT OR TYPE NAME OF AGENCY                        DATE

SIGNATURE OF AGENCY                                 DATE

### *SECTION TO BE COMPLETED BY COURT OF JURISDICTION (851.8 (b), (c), or (d) PC)*

☐ PETITION GRANTED          ☐ PETITION DENIED

PRINT NAME OF JUDGE                                 DATE

SIGNATURE OF JUDGE

### WAIVER:  TIME RESTRICTION ON FILING WAIVED (851.8 (I) PC)

PRINT NAME OF AGENCY OFFICER OR JUDGE                DATE

SIGNATURE OF AGENCY OFFICER OR JUDGE

Distribution:   Department of Justice, Record Sealing Unit, PO Box 903417, Sacramento, CA 94203-4170
                District Attorney
                Petitioner

**(SEE REVERSE SIDE FOR MORE INFORMATION ON PENAL CODE § 851.8)**

# PETITION TO SEAL AND DESTROY ADULT ARREST RECORDS – 851.8 PC

## PETITIONER:

Penal Code section 851.8 PC provides that a person who has been arrested or detained and is determined to be factually innocent may petition the law enforcement agency or the court having jurisdiction over the matter to provide for the sealing and destruction of the record of that arrest. Petitions concerning arrests occurring on or after January 1, 1981, or accusatory pleadings filed on after January 1, 1981, may be filed for up to two years following the arrest filing date. Until January 1, 1983, petitions can be filed for arrests which occurred or accusatory pleadings which were filed up to five years prior to the statute's effective date of September 29, 1980.

## PETITION THE ARRESTING AGENCY (851.8(a) PC

Penal Code section 851.81(a) PC provides in part: "In any case where a person has been arrested and no accusatory pleadings has been filed, the person arrested may petition the law enforcement agency having jurisdiction over the offense to destroy its record of the arrest.  A copy of such petition shall be served upon the district attorney of the county having jurisdiction over the offense."

## PETITION DENIED OR NO RESPONSE TO PETITION (851.8(b) PC

Penal Code section 851.8(b) PC provides in part: "If, after receipt by both the law enforcement agency and the district of a petition for relief under subdivision (a), the law enforcement agency and district attorney do not respond to the petition by accepting or denying such petition within 60 days after the running of the relevant statute of limitations or within 60 days after receipt of the petition in cases where the statute of limitations has previously lapsed, then the petition shall be deemed to be denied.  In any case where the petition of an arrestee to the law enforcement agency to have an arrest record destroyed is denied, petition may be made to the municipal or justice court.   A copy such petition shall be served on the district attorney of the county having jurisdiction over the offense at least 10 days prior to the hearing."   Note:  the petitioner shall be responsible for obtaining the original petition from the law enforcement agency and submission to the court of jurisdiction.

## PETITITON TO THE COURT OF JURISDICTION (851.8(C)

Penal Code section 851.8(c) provide in part: "In any case where a person has been arrested, and an accusatory pleading has been filed, but where no conviction has occurred, the defendant, may, at any time after dismissal of the action, petition the court which dismissed the action for a finding that the defendant is factually innocent of the charges for which the arrest was made.  A copy of such petition shall be served on the district attorney of the county in which the accusatory pleading was filed at least 10 days prior to the hearing on the petitioner's factual innocence."

It is the responsibility of the petitioner to submit any declarations, affidavits, police reports or other evidence, which may exist to support the petition to appropriate the arresting agency or court and to serve a copy of the petition and supporting papers on the district attorney.

# EXHIBIT F

# Claim of Wrong Subject/Wrong Identity

## of Arrest Warrant

I am making an official claim that I am not the person who is wanted on the warrant for which I was arrested.  I understand that by making this claim, I will be subject to arrest for a misdemeanor crime of PC 148 (obstruction of justice) and/or PC148.9 (false information to a peace officer) if it is determined that I am making this claim to avoid prosecution or delay a peace officer in the course of his duty.

I declare, under penalty of perjury in the state of California, that I am not the person wanted under the warrant for which I am arrested today.  Signed on this day of: _____.

**Personal information:**

Full Name:_____

Date of Birth:_____

Current Home Address: _____

_____

Driver's License Number: _____State: _____

Social Security Number:_____

_____          _____

Print Full Name                                        Signature

_____

*For Official Use*

Warrant Number: _____

CII number on warrant: _____

Full name listed on warrant: _____

Date: _____          Time: _____

_____          _____

Deputy Name and ID (printed)                Deputy Signature

Supervisor Signature and ID: _____

## Petición Para Sellar Y Destruir Los Registros
## De Adultos De Detención

Estoy haciendo una afirmación oficial de que no soy la persona que es buscado por la orden de que me detuvieron. Entiendo que al hacer esta afirmación, voy a ser sometido a detención por un delito menor de la PC 148 (obstrucción de la justicia) y / o PC148.9 (información falsa a un agente del orden público) si se determina que estoy haciendo este reclamo para evitar la persecución o retrasar un oficial de paz en el ejercicio de sus funciones.

Yo declaro, bajo pena de perjurio en el estado de California, que no soy la persona buscada en la orden de que me arresten hoy.  Firmado en este día de:
_____.

**Información Personal:**

Nombre Completo:
_____

Fecha de Nacimiento:_____

Dirección Actual: _____

_____

Numero de Licencia de Conducir: _____Estado: _____

Numero de Seguro Social:_____

_____        _____
Impresión del Nombre                              Firma

---

*Para Uso Oficial*

Warrant Number: _____

CII number on warrant: _____

Full name listed on warrant: _____

Date: _____ Time: _____

_____        _____
Deputy Name and ID (printed)                   Deputy Signature

Supervisor Signature and ID: _____

# EXHIBIT G

Ventura County Sheriff's Department
Pre-Trial Detention Facility
Policy & Procedures



Section 4 – Chapter 2
*Booking Identification Procedure*

Drafted: July 30, 2003      Reviewed: January 2011      Revised: January 20, 2011

PURPOSE:

To provide booking procedures for inmates received at the Pre-Trial Detention Facility.

POLICY:

As the final phase of the booking process, each prisoner shall be photographed and fingerprinted to provide a means of verify the inmate's identity during confinement and at the time of release.

Detention Services will allow the capture and retrieval of records from the Detention Services photo-imaging system under the following guidelines:

    A.    Each of the Sheriff's Department photo imaging databases shall be used as originally designed.

        1.    The "Adult" booking database is to be used for capturing only adult arrestee photographs unless otherwise specified by court order.

        2.    The "Juvenile" booking database is to be used for capturing only juvenile photographs.

        3.    The "Registrant" database is to be used for capturing only arson, sex and narcotic registrants except as specified by court order or State law.

        *Note:  Outside agencies having their own capture/retrieval station(s) shall be responsible for the content of their databases and records.  They shall also be responsible for the internal policy and training on the photo-imaging databases and records.  Assistance may be from the Sheriff's Department Photo Imaging System Administrator.*

    B.    Only arrestee photographs shall be taken at any photo-imaging booking capture sites under the jurisdiction of the Sheriff.

C.    Each Division and Bureau under the jurisdiction of the Sheriff's Department shall provide photo-imaging training to their personnel prior to their using the system.

    1.    If additional vendor training is required, it is up to each Division within the Sheriff's Department to make arrangements through their training bureau for additional training. (The vendor training may be coordinated through the Photo Imaging System Administrator or Department designee.)

    2.    Once training is complete, the Division or Bureau will submit by electronic format (e-mail) or memorandum to the Sheriff's Department System Administrator or designee, the names of those personnel who completed training. The document shall also include:

        a.    Instructor's name

        b.    Date of training

        c.    A statement attesting that the trainee(s) demonstrated proficiency in the use of the system.

D.    The Sheriff's Department System Administrator or designee shall be responsible for reviewing the database records for errors and ensuring any errors found are corrected and where necessary, training needs identified.

E.    All Sheriff's Department personnel and all personnel using the databases under the jurisdiction of the Sheriff's Department, shall treat those photo-imaging records as confidential and shall not use these records other than for law enforcement related matters.

F.    All Sheriff's Department personnel and all personnel from outside agencies, accessing these photo-imaging databases should understand that human error does occur. The Sheriff's Department cannot guarantee 100% accuracy of these records and as a result, each agency and their personnel using this system should seek secondary sources to corroborate these records when used for investigative purposes.

G.    The following are the only reasons photos may be released to outside personnel:

    1.    Photo line-up

1066

2.    Attempt to locate poster

3.    Attempts to locate additional witnesses or victims

H.    No Sheriff's Department photographic record shall be produced, copied, loaned, used in any manner, or given out to anyone, other than for legitimate law enforcement investigative purposes.   The Assistant Sheriff of Detention Services or his/her designee must authorize any exceptions.

These guidelines apply to all personnel of the Ventura County Sheriff's Department and participating law enforcement agencies who access the databases under the jurisdiction of the Sheriff.

Failure to adhere to these guidelines will result in the participating agency and their personnel being denied access to the Detention Services Photo-Imaging System.

GENERAL PROVISIONS:

I.    Generally, the Booking Security Deputy shall photograph every person booked into the Ventura County Jail System.  (Refer to Photo Imaging section below.)

II.    Generally, the Booking Security Deputy shall fingerprint each person booked into the Ventura County Jail System.  (Refer to Fingerprints section below.)

PROCEDURES:

I.    Photographs (Photo Imaging System):

A.    After Master Booking, the Booking Security Deputy shall ensure that the inmate is properly photographed.  Each employee involved in capturing photographs of inmates shall be responsible for the following:

1.    The inmate shall be directed to stand behind the pedestal with his/her hands placed along each side of the pedestal.

2.    Ensuring the correct person is photographed at the time of booking.  This shall be accomplished by checking the name and booking number on the inmate's armband with the name and booking number on the 'inmate jacket' prior to capturing any photographs.

a.    The first photograph shall be a frontal view of the inmate and the second photograph shall consist of a right profile of the inmate.

Page 3 of 5

1067

    b.    The first photograph (frontal view) should be taken of the person as he/she normally appears.  If glasses are normally worn, "check glasses" and take front and side photo with glasses on.  Then go to "Appearance 2" and mark "No glasses" and take front and-profile photos.

    c.    The inmate should be directed to look up and face the camera until the photograph can be properly taken.

    d.    Photographs of scars, marks, and tattoos (SMT's) shall be taken with description of location in the demographic field.

3.    The physical description of the inmate shall be updated in the computer.

    a.    The Computer generated photo will be placed on the booking sheet and buff by CIR personnel.

4.    The booking package shall be kept intact and forwarded to Central Inmate Records for proper distribution.

(Note:  Fingerprint cards shall be included in the package.)

II.  Fingerprints:

A.    The Booking Security Deputy shall complete the fingerprinting process.

1.    All but the following inmates shall be fingerprinted using the computer generated Ten Print System.

    a.    "Detainer" inmates who will not be booked.

    b.    In-Transit inmates (Federal prisoners, etc.) unless they are to be housed in the facility.

2.    All inmates charged with retainable offenses will be fingerprinted.

3.    After Master Booking, the Booking Security Deputy shall direct the inmate to press the four (4) inked fingers of his/her right hand in the appropriate space on the back of the Master Booking Sheet and place the inked palm prints on the back of the County Fingerprint Card.

4.    The Booking Security Deputy shall provide the inmate with hand cleaner and a paper towel to remove the print ink.

1068

5.   The Booking Security Deputy shall attach the fingerprint cards and the inmate's Intake Health Screening Form to the Master Booking Forms and return them to Central Inmate Records.

6.   After completing the Master Booking Process, the Booking Security Deputy shall move the inmate to a holding cell pending release or housing.

III.   Re-Photograph:

A.   In the event than an unsentenced inmate receives an authorized haircut, a new photo image shall be taken.

B.   Send the inmate to Level One.

1.   Place the inmate in the photo room.

2.   The inmate's booking number is accurately entered into the computer.

3.   The new Photo Image is placed on the inmates buff and booking sheet next to the old image.

IV.   In the Event of System Failure:

A.   ISB should be contacted immediately to respond in the event of a system failure. If the system cannot be restored within a short period of time, each inmate is to be photographed using the digital camera. A staff member will obtain the digital camera and the date and booking number display placard from the Classification Unit in the event the Photo Imaging System fails.

1.   Place the inmate in the photo room.

2.   Have the inmate hold the date and booking number display about 2" below his chin.

3.   Take one photograph using the digital camera.

B.   Each inmate will be re-photographed when the electrical power is restored.

Page 5 of 5

1069

# EXHIBIT I

## CLASS AND SETTLEMENT NOTICE

NOTICE OF CLASS ACTION, PROPOSED CLASS SETTLEMENT AND HEARING

RE: *Velasquez v. County of Ventura, et al.,*
**United States District Court, Central District of California, Case No. CV 10-10080 CBM**

**If you spent any amount of time following master or supplemental booking, irrespective of duration, in a County of Ventura Sheriff's Office's Jail based only upon a warrant or warrants intended for another individual, during the period of December 30, 2008 until the date of the signing of the Settlement Agreement:**

**You may be a CLASS MEMBER and entitled to MONEY.**

A proposed class action settlement ("Settlement") in the above-captioned action ("Action"), pending in the United States District Court, Central District of California has been reached by the parties and has been granted preliminary approval by the Court supervising the Action.  If the proposed Settlement receives final court approval, CLASS MEMBERS are eligible to receive money.

Records produced in discovery in this case show that **you may be a CLASS MEMBER**. Therefore, **you may be eligible to receive MONEY**. To receive any money in this pending Settlement, **you must fill out and mail a Claim Form.**

Your Claim Form must be postmarked or received by the Administrator no later than

_____.

If you wish to "opt out," or be excluded from the Settlement, your opt-out letter must be postmarked or received by the Administrator by _____.

Even if you do not submit a Claim Form(s) or opt out by the above deadline, you will nonetheless be bound by the Settlement.

**If You Wish to Claim Money, Fill Out and Mail the Enclosed Claim Form Today.**

Below are questions and answers designed to explain to you information about this lawsuit, including how to proceed to submit a claim or otherwise participate in the Settlement process.

**1.      What Is The Class Action Lawsuit About?**

This lawsuit involves the former policy and/or practice of the Ventura County Sheriff's Office ("VCSO") of booking individuals on a warrant or warrants intended for another individual. The class period covers between December 30, 2008 and [the Settlement Agreement signature date].

**2.      Who Is A Member Of The Class?**

You are a member of the class if you spent any amount of time following master or supplemental booking, irrespective of duration, in a County of Ventura Sheriff's Office's Jail based only upon a warrant or warrants intended for another individual, during the period of December 30, 2008 until the date of the signing of the Settlement Agreement, you submit your claim before the deadline, and your claim can be verified.

VCSO must have a record of your being in custody such that officials can identify you individually by your booking photo, fingerprints, and other methods of identification. Review of such records will be required to verify that you are a proper member of the class.

You have received this Notice either because, (1) Records produced in discovery in this matter indicate that you may be a member of the class, or (2) you contacted the Claims Administrator in the belief that you are in the class.

**3.      What Is The Purpose Of This Notice?**

You have a right to know about a proposed Settlement of this class action lawsuit and about all of your options before the Court decides whether to give final approval to the Settlement. Your rights may be affected by this lawsuit.

This information is being sent to every known person who is or may be a member of the class based upon the last known address available from the records of the VCSO, by Class Counsel, or the address that you gave to the class Administrator. This information is also being publicized in an effort to reach class members.

This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are obtained, who is eligible and how to submit a claim.

The Court in charge of the case is the United States District Court for the Central District of California, located in Los Angeles, California. The case is known as Velasquez v. Ventura County. et al., Case No. CV10-10080 CBM. The person who brought the case is called the Named Plaintiff or Class Representative, and the people he sued are called Defendants.

4.      **Why Is This A Class Action?**

In a class action, one or more persons, called the Class Representative(s), sue on behalf of a group of people who have similar claims - the Class Members. One court then resolves the issues for all Class Members, except for those who exclude themselves from the class.

5.      **Why Is There A Settlement?**

This case has been going on for some time. Instead of continuing with the case, both sides have agreed to a settlement. That way, both sides are able to avoid the risks and costs of a trial or appeal, the case can be resolved immediately, and the benefits of the Settlement can be made immediately available to the Class Members. The Class Representative and his attorneys think that the proposed Settlement is fair to the Class Members and the parties in the case and think that the terms of the Settlement are a fair, reasonable and adequate resolution of this matter. Because this is a settlement, the Defendants do not formally admit liability, but they have agreed to pay money to class members under the terms of the settlement and to change their policies to avoid similar mistakes in the future.

6.      **Are There Lawyers Representing You?**

The Court has approved lawyers (called "Class Counsel") to collectively represent you. You will not be asked to pay your own personal money for the services of these attorneys and their associates and staff in litigating this case and negotiating this Settlement. Instead, the lawyers will seek payment from the defendants, subject to final approval of the Court, as is described further below. Only Class Counsel may act on behalf of the class.  However, that does not prevent you from hiring your own lawyer to advise you personally about your rights, options or obligations as a Class Member in this lawsuit. If you want to be represented by your own lawyer, you may hire one at your own expense.

7.      **What Does The Settlement Provide?**

The Settlement provides for the following payments to Class Members:

Defendants shall make a $3,000 payment for each "incarceration incident" on a claims-made basis with a total settlement fund of $120,000.  If the incident claims exceed 40, the total settlement fund shall be redistributed on a pro-rata basis per incident.  If the incident claims are fewer than 40, the balance of the class settlement fund will automatically revert to the County of Ventura.  An "incarceration incident" is defined as "any amount of time following master or supplemental booking, irrespective of duration, spent in the Ventura County Jail System stemming from a mistaken identity arrest made during the temporal limits of the class, December 30, 2008 until the date of the signing of the Settlement Agreement."

The Claims Administrator shall deduct up to 50% from any claim payment amounts owed by a claim participant for liens or court orders for restitution, child support, debts owed to the

County of Ventura or any statutory liens. By filing a Claim Form, you agree to allow the Claims Administrator access to your records regarding restitution, child support, debts owed to the County of Ventura or any statutory liens.

If a Class Member who has submitted a timely claim form is notified of a lien, and believes that there is a mistake of some kind, he or shall have the right to seek a review of the lien by submitting a letter and documentation, which shall be reviewed by a Special Master, whose determination will be final and non-appealable. No hearing shall be held on such review unless ordered by the Special Master.

Because no more than 50% of the amount due to a claimant may be deducted to pay such restitution, debts or liens, all qualifying claimants will receive some money even if such deductions occur.

In addition, the Agreement provides for the following other payments:

a) Separate payment by Defendants of a total not exceeding $55,000 which will be paid to the Named Plaintiff. The Named Plaintiff will receive more under the Settlement than other Class Members because of the role that he played in the litigation, and because of individualized damages determinations made in his case. The Court will finally approve whether to allow this amount, or a different, (but not higher) amount.

b) An award of attorneys' fees and costs, to be separately paid by the Defendants, in the amount of $175,000 to Class Counsel, subject to the final approval of the Court.

The VCSO has also agreed to implement new policies and procedures which are designed to prevent these kinds of occurrences from happening in the future. The computer files maintained by the VCSO on all eligible Class Members will be examined and updated to ensure that your fingerprint identification numbers are not confused with the fingerprint identification numbers belonging to anyone else. Furthermore, a new booking procedure will be implemented to verify the identity of arrestees who are booked on warrants based upon their fingerprints. In addition, any arrestee who claims that he or she is not the proper subject of a warrant will have his or her claim investigated thoroughly and immediately after the claim is made.

**8.     Will I Receive Anything From The Settlement?**

If it is verified that you are a Class Member, and you submit an approved claim within the time set by the Court, you will be entitled to receive compensation in accordance with the terms described above.

Settlement payments to Qualified Claimants shall be made as discussed above. Qualified Claimants shall be exclusively liable for any and all tax liability, if any. The Claims Administrator shall issue each Qualified Claimant an IRS 1099 Form as required. Qualified Claimants should consult with their tax advisors concerning the tax consequences of the payments they receive under the Settlement.

9.      **What Do I Do To Get Money?**

If you wish to receive money from the Settlement, you must complete and submit the accompanying Claim Form. Read the instructions on the Claim Form carefully. All Claim Forms must be completed and postmarked (or received by the Administrator) no later than _____, but it is recommended that you complete and mail your Claim Form as soon as possible. If you do not timely and properly submit your Claim Form, you will not receive any money from the Settlement. If you need a copy of a Claim Form, please call _____ (toll free), or write to the Velasquez v. Ventura County Settlement Administrator,      CA _____, or download the Form from the Internet at _____.

10.     **What Do I Do If I Received a Notice That I Was a Possible Settlement Class Member?**

Because the computer records do not identify many individuals who have been booked only as a result of a mistaken identity arrest, some people will receive letters asking if, to the best of their recollection, they were so booked. Individuals who believe they qualify should complete and return a Claim Form within the time explained in this Notice, in which they state, under penalty of perjury, that it is their best recollection that they were booked. At that point, their records will be reviewed to determine if they are a class member. There is then a procedure to determine whether that person is a class member. If the Claim Administrator denies your claim, you will have the right to appeal the decision to a Special Master appointed by the United States District Court.

11.     **Can I Exclude Myself From The Settlement?**

If you do not want to be a member of the class, then you must take steps to get out of the class. This is called "excluding yourself" from, and sometimes is referred to as "opting out" of, the class.

12.     **What Do I Do To Exclude Myself From The Lawsuit?**

To exclude yourself, you must fill out the enclosed "Opt-out" form and send it by First-Class mail to: Velasquez v. Ventura County Settlement Administrator,      CA _____,

Be sure to include your name, address, telephone number and signature. The name and address of your attorney is not sufficient. You must mail your Opt-out form, postmarked no later than _____, to:

Velasquez v. Ventura County Settlement Administrator _____ _____, CA
_____

You cannot exclude yourself on the phone or by email. If you are excluded, you will not be entitled to get any money from the Settlement, and you cannot object to the Settlement. Nor

will you be legally bound by anything that happens in this lawsuit.

Unless you exclude yourself from the class, you remain in the class and give up all of your rights against the Defendants except those available to you under this Settlement. That means that, if you don't exclude yourself and you also don't submit a claim, you will receive no money but still lose your rights against the Defendants, so be sure to submit your claim.

### 13.    What Is The Release Of Claims?

If you are a class member and have not excluded yourself from the class as described above, you are waiving all of your rights to all claims during the class period related to mistaken identity incarceration incidents by the VCSO falling within the Court's definition of the Class, even those you are not aware of at present. This waiver includes a waiver of the provisions of California Civil Code § 1542, which provides that "a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." By not excluding yourself, you will be giving up unsuspected claims in these areas related to mistaken identity incarceration incidents by the VCSO.  However, you will not be giving up any other claim(s) that you may have against Ventura County for conduct not covered by this Settlement.

### 14.    If I Do Not Like The Settlement Or Object To The Attorneys' Fees, How Do I Tell The Court?

If you are and remain a Class Member, you can object to the Settlement if you do not like any part of it, or you may object to the request for Attorneys' Fees. You must give the reason why you think that the Court should not approve the Settlement or the requested Attorneys' Fees.  (A mere statement that "I object" will not be sufficient.)  Do not contact the Court orally to object. Rather, you must send a written statement with the case name and number *(Velasquez v. Ventura County et al.,* Case No. CV 10-10080 CBM) at the top of the page. In addition, provide your name, your address (just giving the address of an attorney who represents you is not sufficient), your telephone number, the date of incarceration to the extent known, your signature and the reason why you object. If you are represented by a lawyer, you should also give the name, address and telephone number of that lawyer. You must mail your objections and any supporting papers by First-Class mail, postmarked no later than _____, to the Court and counsel as follows:

A)  United States District Courthouse for the Central District of California, 312 N. Spring Street, Los Angeles, CA 90012

B)  The Law Offices of Brian A. Vogel, PC, 770 County Square Dr., Ste. 104, Ventura, CA 93003.

C)  The Law Offices of Alan E. Wisotsky, 300 Esplanade Drive, Suite 1500, Oxnard, CA 93036

A full set of the settlement documents, including the Proposed Final Order of Approval and Settlement and the Motion For Award of Attorneys' Fees and Costs either is available (or will be if the motion for attorneys' fees has not yet been filed) on the case website, _____.

### 15.   What Is The Difference Between Objecting And "Opting out."?

Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you stay in the class. If you object and the Court rejects your objection, you remain a member of the class and will be bound by any outcome of the case. "Opting out" is telling the Court that you do not want to be part of the class. If you opt out, you have no basis to object because the case no longer affects you. If you do object but want to participate in the settlement as a class member, you should also submit a Claim Form.

### 16.   When And Where Will The Court Decide Whether To Approve The Settlement And Attorneys' Fees?

The Court has scheduled the Fairness Hearing for _____ A.M. on _____, 2011, in the United States District Courthouse for the Central District of California, 312 N. Spring Street, Los Angeles, CA 90012, in the Hon. Judge Consuelo Marshall's Courtroom, Courtroom No. Two. At this Hearing, Judge Marshall will consider whether the Settlement is fair, reasonable and adequate, and will determine the amount of Attorneys' Fees and costs to be awarded. If there are any objections, the Court will consider and rule on them. We do not know how long this process will take. We do not know if the Hearing will be continued. There will not be a new notice if it is. You may speak at the Hearing but only if you have submitted your comments or objections as described above.

### 17.   Do I Have To Come To The Hearing?

No. You may, but need not, attend the Hearing. Class Counsel will answer any questions the Court may have. However, you may come if you choose, at your own expense. If you sent a written objection, you do not have to come to Court to talk about it. As long as you properly submitted your written objection, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

### 18.   May I Speak At The Hearing?

You will not be heard unless you have submitted your comments or objections and have requested to address the Court at the Hearing. You cannot speak at the Hearing if you exclude yourself. If you have submitted an objection, the Court will decide whether or not to hear from you verbally as well.

### 19.   What Happens If I Do Nothing At All?

If you do nothing, your rights will be affected. You will be bound by the terms of the Settlement and you will be agreeing to a release of the claims that are contained in the

Settlement. However, because you did not submit a claim, you will not be entitled to any money from the Settlement.

**20.     When will I Receive Money From the Settlement?**

No money will be paid until after the Settlement is approved and all possibilities of appeal are completed.  After that, it will take at least two months, and quite possibly more, to process all of the claims, calculate the amount due to each Class Member and receive the money to send to the Class Members.  For some whose status as a class member is not clear, it may take considerably longer.

If you submit a claim and do not receive money within six months after _____, which is the last day to mail or submit a claim, check the website for this case about when mailings are expected, or contact the Class Administrator by either calling or writing to:

Velasquez v. Ventura County Settlement Administrator _____ _____,CA _____

We strongly recommend that you keep a copy of your Claim Form. You may want to send the Claim Form in by certified mail so it can be verified, but you are not required to do so.

**21.     What Happens If There Is Not A Final Settlement?**

Under certain circumstances, it is possible that the Settlement might not go through (for example, if there are too many people who decide not to participate. or if the court for some reason does not approve the settlement).  In that situation, the case would go forward.

**22.     Are There More Details About The Settlement?**

This Notice merely summarizes the proposed Settlement.  You may go to the website titled _____ to see the complete Settlement documents in the case, or a copy of the Motion for Award of Attorneys.' Fees and Costs when it is filed. In the event that any description in this Notice of the terms in the Settlement documents conflict with the actual terms of the Settlement documents, the terms of the Settlement documents control. You may also contact class counsel, Brian A. Vogel, Law Offices of Brian A. Vogel, 770 County Square Drive, Suite 104, Ventura, CA 93003, Telephone: (805) 654-0400.

**PLEASE DO <u>NOT</u> CONTACT THE CLERK OF THE COURT OR THE JUDGE WITH QUESTIONS.**

# EXHIBIT J

SPANISH VERSION
TO BE TRANSLATED

# EXHIBIT K

## [TELEVISION AND RADIO ADVERTISEMENT]

If you were booked and spent time in a Ventura County Sheriff's Office's Jail based only upon a warrant or warrants intended for another individual, during the period of December 30, 2008 until [date of the signing of the Settlement Agreement], you may be a CLASS MEMBER in a recent, federal class action settlement and you may be entitled to MONEY.

If you were booked and spent time in a Ventura County jail facility and you believe that you are a CLASS MEMBER, CALL NOW [ 800# ] and request a claim form.

Important deadlines apply. If you believe you are a Class Member, log on to our website at www. _____, CALL [ 800#_____ ], or write to the settlement administrator at the address on your screen. (The last phrase will be omitted in the radio ad.)

Velasquez v. Ventura County Settlement Administrator
[Address]

# EXHIBIT L

SPANISH VERSION
TO BE TRANSLATED

# EXHIBIT M

## [NEWSPAPER ADVERTISEMENT]

If you spent any amount of time following master or supplemental booking, irrespective of duration, in a County of Ventura Sheriff's Office's Jail based only upon a warrant or warrants intended for another individual, during the period of December 30, 2008 until the date of the signing of the Settlement Agreement, you may be a CLASS MEMBER in a recent, federal class action settlement and you may be entitled to MONEY.

If you were booked and spent time in a Ventura County jail facility and you believe that you are a CLASS MEMBER, CALL NOW [ 800# ] and request a claim form.

Important deadlines apply.  If you believe you are a Class Member, log on to our website at www. _____, CALL [ 800#_____ ], or write the settlement administrator at:

Velasquez v. Ventura County Settlement Administrator
[Address]

In order to participate in the Settlement, you must contact the Settlement Administrator at the address below for a Claim Form.  You must submit your Claim Form by _____ and have your claim verified in order to be a CLASS MEMBER.   If the you do not submit a Claim Form or opt out by _____, you will receive no money but still lose your rights against the Defendants.

If the proposed Settlement receives final court approval, CLASS MEMBERS are eligible to receive MONEY.

PLEASE DO <u>NOT</u> CONTACT THE CLERK OF THE COURT OR THE JUDGE WITH QUESTIONS.

# EXHIBIT N

## PROOF OF CLAIM FORM

VENTURA COUNTY SHERIFF MISTAKEN IDENTITY INCARCERATION LAWSUIT
CLASS ACTION CLAIM FORM (*VELASQUEZ V. COUNTY OF VENTURA ET AL.*)
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT, CASE NO. CV10-10080 CBM

FILL OUT THIS FORM IF, BETWEEN THE DATES OF DECEMBER 30, 2008 AND [DATE OF
SETTLEMENT AGREEMENT] ("CLASS PERIOD"), YOU, TO YOUR GOOD FAITH BEST
RECOLLECTION, SPENT ANY AMOUNT OF TIME FOLLOWING MASTER OR
SUPPLEMENTAL BOOKING, IRRESPECTIVE OF DURATION, IN A COUNTY OF VENTURA
SHERIFF'S OFFICE'S JAIL BASED ONLY UPON A WARRANT OR WARRANTS INTENDED
FOR ANOTHER INDIVIDUAL.

Any person who spent any amount of time following master or supplemental booking, irrespective
of duration, in a County of Ventura Sheriff's Office's Jail based only upon a warrant or warrants
intended for another individual, during the period of December 30, 2008 until the date of the signing
of the Settlement Agreement MAY BE ENTITLED TO RECEIVE A MAXIMUM PAYMENT OF
UP TO $3,000.00 FOR EACH MISTAKEN IDENTITY INCARCERATION INCIDENT
OCCURRING DURING THE CLASS PERIOD.

The Claims Administrator shall deduct from any claim payment amounts owed by a claim participant
for unpaid liens up to 50% of the amount of the payment which the claim participant is otherwise
entitled. By submitting a Claim Form, you agree to allow the Claims Administrator to access your
records regarding the related incarceration and any potential statutory liens.

You must fully complete and submit this claim form so that it is postmarked no later than
_____ to qualify for payment from the settlement of this class action case against the
County of Ventura. If you do not return a fully completed claim form by the due date, you will
receive no money from the settlement but will still be bound by its terms, including that you will
have waived and released all claims of wrongful mistaken identity incarcerations against the County
of Ventura and the other Defendants.

## PROOF OF CLAIM AND RELEASE FORM

_____

Full Name:                                              Please print or type your <u>correct</u>
                                                        name, driver's license number, date
                                                        of birth, social security number and
Address:                                                and contact information here.
Phone No.:

Driver's License No.:

Social Security No.:

Date of Birth:

_____

IN ANSWERING EACH QUESTION BELOW, YOU ARE STATING UNDER PENALTY OF
PERJURY THAT, TO THE BEST OF YOUR GOOD FAITH RECOLLECTION, THE
ANSWERS ARE CORRECT:

|  | <u>Yes</u> | <u>No</u> |
|---|---|---|
| 1. Were you, at any time between December 30, 2008, and [Date of Settlement Agreement], booked into a County of Ventura Sheriff's Office's (VCSO) Jail based only upon a warrant or warrants intended for another individual? | ☐ | ☐ |

If you answered "yes" to the above, please continue to answer the
questions below.

2. Between December 30, 2008, and [Date of Settlement Agreement],

A) How many times were you incarcerated as described in Question 1? _____ times.

B) What were the dates of your booking and incarcerations to the best of your recollection?

_____

_____

3. Were you held in custody based ONLY upon the warrant or warrants of the other individual?

4.  Who was the proper subject of the warrant for which you were arrested? (If you know)

_____

5.  What were the dates of his or her booking and incarcerations? (If you know)

_____

Eligibility will be based upon the answers given in this document and on records maintained by VCSO and the records of any other jurisdiction in which you or the other individual were booked that are acquired by Class Counsel.  If your claim is rejected, you will be given notice and an opportunity to submit evidence proving your claim and your status as a class member.

Mail the completed claim form and any supporting information to: Class Administrator,

_____.

BY SIGNING THIS CLAIM FORM, YOU AUTHORIZE CLASS COUNSEL, DEFENDANTS AND THE APPOINTED CLAIMS ADMINISTRATOR, COUNTY OF VENTURA, ACCESS TO YOUR CRIMINAL ARREST AND BOOKING RECORDS MAINTAINED BY THE COUNTY OF VENTURA AND THE RECORDS OF ANY OTHER JURISDICTION IN WHICH YOU WERE BOOKED FOR THE EXPRESS AND SOLE PURPOSE OF VERIFYING YOUR CLAIM AND EVALUATING WHETHER YOU QUALIFY FOR COMPENSATION AS PART OF THIS SETTLEMENT.  BY SIGNING THIS FORM, YOU ARE FURTHER AUTHORIZING CLASS COUNSEL, DEFENDANTS, AND THE APPOINTED CLAIMS ADMINISTRATOR, COUNTY OF VENTURA, TO REVIEW ANY RECORDS RELATING TO ANY LIENS OR COURT ORDERS FOR RESTITUTION, CHILD SUPPORT, DEBTS TO COUNTY AGENCIES AND STATUTORY LIENS.  YOU ARE EXPRESSLY WAIVING ANY PRIVACY CLAIMS YOU MAY HAVE AS TO THE CLAIMS ADMINISTRATOR, CLASS COUNSEL AND DEFENDANTS, ITS EMPLOYEES AND COUNSEL WITH RESPECT TO THESE RECORDS.

By participating in the Settlement you will be waiving all your rights to all claims related to mistaken identity incarcerations by the Ventura County Sheriff's Office falling within the Court's definition of the Class, even those you are not aware of at present.  This waiver includes a waiver of the provisions of California Civil Code § 1542, which provides that "a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."  By participating, you will be giving up unsuspected claims in these areas.  You may obtain a copy of the settlement agreement at the following website: www._____  You may also request a copy of the Settlement Agreement from the Claims Administrator.

By signing this form below, I am confirming that the above information is correct to the best of my recollection and that:

1.    I am the person identified above and I am over the age of 18.
2.    I have not received money or compensation for any of the claims involved in this case.
3.    I will abide by, and be limited to, the formula for damages approved by the Court.
4.    I will keep the Claims Administrator informed of my whereabouts at all times during the duration of the claims administration period.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT THE ABOVE IS TRUE AND CORRECT:


DATED:_____          SIGNATURE:_____

**THIS CLAIM FORM MUST BE FULLY COMPLETED, SIGNED AND RETURNED WITH A POSTMARK NO LATER THAN** _____.

If you need assistance in completing this form, please feel free to contact the following Class Counsel: Brian A. Vogel, The Law Offices of Brian A. Vogel, 770 County Square Drive, Suite 104, Ventura, CA 93003, Telephone: (805) 654-0400.

**PLEASE DO NOT CONTACT THE CLERK OR THE JUDGE OF THE UNITED STATES DISTRICT COURT.**

# SPANISH VERSION
# TO BE TRANSLATED

# EXHIBIT O

DATE
NAME
ADDRESS

RE:     Possible Settlement Class Member of *Velasquez v. County of Ventura et al.*
        *United States District Court, Central District of California*
        *Case No. CV10-10080 CBM*

Dear Sir or Madam:

The County of Ventura has been named as a defendant in a class action lawsuit filed on behalf of persons who spent any amount of time, following master or supplemental booking, irrespective of duration, in a County of Ventura Sheriff's Office's Jail based only upon a warrant or warrants intended for another individual, during the period of December 30, 2008 until the date of the signing of the Settlement Agreement.

Under the terms of the Settlement Agreement in this matter, you have been identified as a "Possible Settlement Class Member." However, we have been unable to confirm that you are an "Identified Class Member" for one or more of the following reasons:

(1)     It is unclear whether the individual who was the proper subject of the warrant was booked, fingerprinted and LiveScanned; or

(2)     It is unclear whether you were booked in a County of Ventura Sheriff's Office's Jail based only upon on the warrant or warrants of the other individual.

If you believe, to the best of your recollection, that you spent any time incarcerated in a County of Ventura Sheriff's Office's Jail following master or supplemental booking, based only upon a warrant or warrants intended for another individual, you may submit a Proof of Claim and Release Form ("Claim Form") under penalty of perjury to the Claim Administrator. For your reference, a Claim Form along with Class and Settlement Notice is provided with this letter.

Upon submission of your Claim Form, the Administrator, theVentura County Sheriff's Office and Class Counsel will review your arrest records to verify the accuracy of your claim. By signing the Claim Form you are giving your consent to such a review. Only those Possible Settlement Class Members who:

(1)     Consent to a review of their arrest records,

(2)     Fill out the claim form and submit it before the deadline,

(3)     and are found to have valid claims following a review of the Claim Form and arrest records will qualify for compensation.

If your claim is accepted, you will become an "Identified Class Member" under the terms of the

Settlement Agreement and may be entitled to compensation in accordance with those terms. If the Claim Administrator denies your claim, you will have the right to appeal that decision to a Special Master appointed by the United States District Court. The Special Master's decision will be made without a hearing, unless the Special Master decides one is necessary; the Special Master's decision is final and non-appealable.

Should you have questions about this process, want more information about your rights, or need assistance in completing the claim form, please feel free to contact Class Counsel, the Law Offices of Brian A. Vogel, PC, 770 County Square Dr., Ste. 104, 93003, Phone: (805) 654-0400.

CLAIMS MUST BE SUBMITTED BY_____, OR THEY WILL NOT BE HONORED. IF YOU BELIEVE YOU ARE A CLASS MEMBER, YOU SHOULD READ THE NOTICE SENT WITH THIS LETTER TO UNDERSTAND THE PROPOSED SETTLEMENT, AND, IF YOU WISH TO PARTICIPATE, SEND IN YOUR CLAIM AS SOON AS POSSIBLE.

Do not contact the United States District Court.

Very truly yours,

# SPANISH VERSION
# TO BE TRANSLATED

# EXHIBIT P

*Velasquez v. County of Ventura et al.*
United States District Court, Central District of California, Case No. CV10-10080 CBM

## **OPT-OUT FORM**

Name
c/o
Address
City, State Zip
Telephone number
Social Security Number _____-_____-_____
Date of Birth

Please complete this Opt-Out Form only if you do not want to participate in the Settlement that is described in the Notice of Class Action Settlement that accompanies this Form.

I wish to exclude myself from receipt of any of the benefits, terms or conditions of the settlement in the case of *Velasquez v. County of Ventura et al.*, United States District Court, Central District of California, Case No. CV10-10080 CBM.  I understand that by returning this Opt-Out Form **I will not receive any money from the Settlement**. I further understand that I may bring a separate lawsuit at my expense, but that I may receive nothing, or less than I would have received if I had filed a Claim for money pursuant to the Settlement in the present case.

I also understand that in order to be a valid and timely, this Opt-Out Form must be filled out in full, signed and returned to the Claim Administer post-marked no later than _____, 2011 to:

Velasquez v. County of Ventura et al. Claims Administration Center
<<Claims Administrator>>
<<Address>>
<<Phone>>

By signing and returning this Opt-Out Form, I certify that I have carefully read the Notice of Class Action Settlement and that I wish to be excluded from the Settlement and the Class Action described therein.

SIGNED:

_____ Dated: _____, 2011

# EXHIBIT 2

## DECLARATION OF BARRETT S. LITT

BARRET S. LITT, an attorney, declares under penalty of perjury, and to the best of his
knowledge, information, and belief, as follows:

1.      I am a founding member of Litt Estuar & Kitson, LLP in California.

2.      I was class counsel in <u>Craft v. County of San Bernardino</u>, Case No. 05 cv
539 (C.D. Cal.). In <u>Craft</u>, plaintiffs challenged, *inter alia*, a mandatory policy that all pre-trial
inmates at the San Bernardino County Jail who went to court and became entitled to immediate
release from custody be strip searched before being released, as well as the policy of conducting
all jail strip searches in groups without privacy.  The class encompassed detainees held on all
types of charges, ranging from petty offenses to felonies.

3.      We preliminarily settled the <u>Craft</u> case with the County of San Bernardino
in 2007; the final approval hearing was in 2008. The case settled for $25.5 million.  In <u>Craft</u>, we
mailed notice to 150,084 class members and received 20,938 claim forms that were eligible for
payment.  This resulted in a 13.6% claims rate.  After the claims period ended, the court extended
the claims period because many inmates at certain facilities contended that, although mailed
notices may have been sent to them, they had not been received. Additional notices were sent to
those who requested them. As a result, we received an additional 8,562 eligible claim forms.

4.      I was also class counsel in <u>Williams v. County of Los Angeles</u>, Case No.
2:97-cv-03826-CW (C.D. Cal.) (a/k/a <u>Williams v. Block</u>), in which we challenged, *inter alia*, the
Los Angeles County Jail's policy of over-detaining and strip-searching detainees after a court had
ordered them to be released.

5.      We settled the <u>Williams</u> case for $27 million.  There were 276,717 class
members, to whom we mailed notice. We received 36,730 claim forms that were entitled to

payment. This resulted in a 13.3% claims rate.

      6.    I was also class counsel in <u>Bynum v. District of Columbia</u>, Case No. 02 cv 956 (D.D.C. 2006). In <u>Bynum</u>, we challenged, *inter alia*, over-detentions and strip searches of detainees whom the court had ordered to be released. The case settled for $12 million. We mailed notice to 25,833 class members. We received 3,734 claim forms that were eligible for payment. This resulted in a 14.4% claims rate.

    I swear under penalty of perjury that the foregoing is true and correct.

Dated: February 21, 2011

                                                  BARRETT S. LITT